[S. F. No. 22532. In Bank. Oct. 17, 1967.]

DOW CHEMICAL CO. et al., Petitioners, v. WORKMEN'S COMPENSATION APPEALS BOARD, GEORGE QUICK et al., Respondents.

Mullen & Filippi, Adolph J. Capurro, Hanna & Brophy, Ivan A. Schwab, Harold J. Scott, Arthur E. Varden, Sedgwick, Detert, Moran & Arnold and C. Gordon Taylor for Petitioners.

Thomas C. Lynch, Attorney General, B. Franklin Walker and Donald B. Day, Deputy Attorneys General, Everett A. Corten and Marcel L. Gunther for Respondents.

PETERS, J.—Claimant George Quick was employed as a carpenter for Dow Chemical Co. from 1946 until January 1964. Beginning in 1949 he suffered back pains and distress caused primarily by lifting heavy items at work. In 1949, 1960, and 1961 he suffered specific back injuries that left him partially disabled, but he continued to work with short exceptions until January 2, 1964, at which time his back condition was so severe he had to give up his job.

On April 22, 1965, Quick filed with the Industrial Accident Commission three claims for disability benefits. The first (65 OAK 16733) was based on the 1949 back injury; the second (65 OAK 16734) the 1960 injury incurred while lifting heavy doors onto a truck and which disabled Quick for some three months; and the third (65 OAK 16735), the 1961 injury, incurred while prying timber with a crowbar and which also rendered Quick unable to work during various periods of time thereafter.

Named as defendants in the claims for the 1960 and 1961

injuries were Dow Chemical, Associated Indemnity Corp. (Dow's insurer in 1960-1961), and the state Subsequent Injuries Fund.

The three cases were consolidated for the purposes of hearing and receipt of evidence, and a hearing was held on July 29, 1965. Quick testified about the progressive deterioration of his back condition following the initial strain suffered in 1949 while lifting large bolts. In 1951-1952 he received therapy and traction from a chiropractor. He suffered another specific strain in 1953. After the incident in August 1960 his back pains were more severe and he was placed for a time on light duty by Dow. After the strain in December 1961 his ability to lift heavy objects and to bend over was very limited. In 1964 he had a back operation, but it did not eliminate the severe pain he suffers. He now must wear a back brace. Testimony of physicians corroborated Quick's account.

A further hearing was held September 14, 1965, at which the report of Dr. Hedberg was received. Dr. Hedberg examined Quick on August 12, 1965, and reviewed extensive medical records of the history of Quick's back ailment. He concluded that Quick had a worn-out back which no treatment could restore. He said Quick suffered a long-standing degenerative disease of the spine with progressive deterioration. Degenerative changes appeared on X-rays taken as early as 1954. Hedberg thought Quick's back was congenitally weak, that after the 1949 incident the exacerbations to the condition were too numerous to identify, and that the 1960 and 1961 strains were simply two of the more severe incidents of exacerbation. He said the major pathology was in existence in 1960 and probably would have progressed to the present condition of deterioration eventually simply as a result of strain caused by the ordinary activities of life, regardless of the specific strains suffered in 1960 and 1961. Nevertheless, he concluded that it would be medically permissible to rate Quick's permanent disability as it existed prior to the 1960 incident at 60 percent, dividing the remainder of his current total disability between the 1960 and 1961 incidents.

The referee's report of this hearing states that Dr. Hedberg's report indicated that the *Beveridge* principle was applicable to Quick's case and that Quick's attorney should file another claim on the basis of the *Beveridge* doctrine.[1] The

---

[1]In *Beveridge* v. *Industrial Acc. Com.*, 175 Cal.App.2d 592, 594-595 [346 P.2d 545], the opinion of Justice Tobriner states:

hearing was continued so that the additional complaint could be considered.

On September 17, 1965, Quick filed his application in the matter which we now have before us on writ of review. (65 OAK 17999.) In it Quick alleges permanent disability caused by repetitive trauma from 1946 *until January 1964.*[2]

Hearing was held November 9, 1965, with the newly filed claim consolidated with the previously consolidated trio of claims for purposes of the hearing. Dow Chemical, the four insurance companies which insured it during 1946-1964, the state Subsequent Injuries Fund, and Quick were represented by counsel. Dr. Hedberg testified and repeated the substance of his written report and again took the position that Quick's back condition would probably have deteriorated eventually to its existing condition even if Quick had quit doing work in 1960 that involved lifting and bending. Quick's type of work in the 1960's merely caused his back deterioration to progress more rapidly. The transcript of this hearing contains the following:

Question by counsel for Associated Indemnity: "Now, what you are saying . . . is that no matter how you categorize the episodes of 1960 and 1961, they are no more than, perhaps, more pronounced incidents than those that he [Quick] had prior, which led to the culmination of disability referable to the whole spine?"

Answer by Dr. Hedberg: "That was my philosophy, after studying the whole case. I feel they were simply ones that stood out a little bit more, but there were many others along the line that he did not make a formal complaint of. . . . He

---

"We think the proposition irrefutable that while a succession of slight injuries in the course of employment may not in themselves be disabling, their cumulative effect in work effort may become a destructive force. The fact that a single but slight work strain may not be disabling does not destroy its causative effect, if in combination with other such strains, it produces a subsequent disability. The single strand, entwined with others, makes up the rope of causation.

"The fragmentation of injury, the splintering of symptoms into small pieces, the atomization of pain into minor twinges, the piecemeal contribution of work-effort to final collapse, does not negate injury. The injury is still there, even if manifested in disintegrated rather than in total, single impact." (See also *Argonaut Ins. Co.* v. *Industrial Acc. Com.*, 231 Cal.App.2d 111 [41 Cal.Rptr. 628].)

[2] Named as defendants in this application were Dow Chemical, Associated Indemnity Corp., The Travelers Insurance Company, Insurance Company of North America, and Zurich Insurance Company. The Subsequent Injuries Fund was not originally named as a defendant.

had gotten accustomed to having these now and then, and these have been selected as supposed injuries, three only [this would refer to the 1949, 1960, and 1961 incidents], but that doesn't fit the medical picture as far as I am concerned, I think.''

The referee's report on the four cases was filed March 3, 1966, and on March 10 the WCAB filed its findings and award on each of the four matters then pending.

In the case involving the 1949 injury (65 OAK 16733) no award was made in Quick's favor.

In the case involving the August 1960 injury (65 OAK 16734) the WCAB found that Quick suffered a permanent disability rated at 7½ percent, or 10 percent of his total permanent disability in 1966, which was found to be 75 percent. Associated Indemnity was ordered to pay specific sums for temporary and permanent disability benefits, plus 10 percent of medical-legal expenses for the consolidated cases and 10 percent of future medical expenses Quick should incur for treatment of his back condition.

In the case involving the December 1961 injury (65 OAK 16735) the WCAB again found that Quick suffered a permanent disability rated at 10 percent of his total disability, that is, 7½ percent. Award was made against Associated Indemnity which was identical to the award made in the 1960 injury case (65 OAK 16734).

In the cumulative injury case (65 OAK 17909) the WCAB found that Quick suffered a cumulative injury to his back during the course of his employment from October 1946 *to August 3, 1960* (the day before the specific back strain in 1960). The WCAB found that Quick's then existing total permanent disability was 75 percent and rated the cumulative injury as causing 80 percent of 75 percent, that is, a rating of 60 percent permanent disability. The WCAB apportioned the liability among the four insurance carriers who insured for Dow from 1946 to August 1960. The carriers were ordered to pay—pro rata—80 percent of the medical-legal expenses of the four cases and 80 percent of the cost of further medical treatment for his back that Quick might require.

None of the parties to the cases involving specific injuries in 1949, 1960, and 1961 requested reconsideration by the WCAB. As a result, these awards became final. In the cumulative injury case (65 OAK 17909), however, reconsideration was sought by Quick, Dow Chemical, and three of the four

defendant insurance carriers. Along with his petition for reconsideration Quick also filed an application for benefits against the state Subsequent Injuries Fund.

On April 22, 1966, the WCAB granted reconsideration in the cumulative injury case, further hearing was held, and on June 28 the WCAB filed its first opinion and decision after reconsideration. It was the same as the prior decision except for corrections made in computation and allocation of the award. Quick and Travelers Insurance Co. petitioned for further reconsideration, which was granted by the WCAB on September 15.

On November 15, 1966, the WCAB announced its final decision in the cumulative injury case. It held that Quick's cumulative injury, rated at 75 percent permanent disability, was incurred by repeated stress in the course of his employment from October 1946 to September 3, 1963. The WCAB stated it had "taken notice" of the findings and awards made in 65 OAK 16734 (1960 injury case) and 65 OAK 16735 (1961 injury case), but concluded that the specific injuries in 1960 and 1961 should properly be viewed merely as two of the numerous exacerbations causing the cumulative injury. The board noted that Associated Indemnity had been ordered to pay awards in 65 OAK 16734 and 65 OAK 16735, and that it could not alter or amend those awards. Nevertheless, in order to prevent duplication of benefits to Quick, the WCAB ordered that Associated Indemnity be given credit on its liability under the decision in the cumulative injury case for all sums it had to pay in the cases involving the 1960 and 1961 injuries.

The final decision ordered the four insurance carriers to pay temporary and permanent disability and a life pension to Quick, to provide further medical treatment to Quick if necessary, and to pay for medical-legal expenses of the litigation. The precise sums payable to Quick for temporary and permanent disability and the weekly life pension were fixed in the decision; but allocation of liability among the four carriers was not made, the WCAB reserving jurisdiction "to determine the rights inter se of defendants with respect to satisfaction of the foregoing Award."[3] The decision also dismissed

[3]The board did establish the periods of time during the course of the cumulative injury for which each defendant carrier was insuring for Dow Chemical: Insurance Company of North America, October 1946 to March 28, 1949; Zurich Insurance Co., March 28, 1949, to March 28, 1950; The

Quick's application for benefits from the Subsequent Injuries Fund on the ground that there was no evidence that Quick had any permanent partial disability *prior to October 1946.*

Annulment of the award in 65 OAK 17909 is sought by the four insurance carriers on the ground that the WCAB failed to give res judicata effect to its decisions in the two cases involving specific injuries in 1960 and 1961. The carriers contend that in effect, the WCAB has rescinded its decisions in 65 OAK 16734 and 16735 in contravention of statute (Lab. Code, §§ 5803, 5804). They argue that if the WCAB had given effect to the prior decisions which held that Quick suffered permanent disability in 1960 and in 1961, the total liability of the carriers in the cumulative injury case would be reduced pursuant to section 4750 of the Labor Code. It provides:

"An employee who is suffering from a previous permanent disability or physical impairment and sustains permanent injury thereafter shall not receive from the employer compensation for the later injury in excess of the compensation allowed for such injury when considered by itself and not in conjunction with or in relation to the previous disability or impairment.

"The employer shall not be liable for compensation to such an employee for the combined disability, but only for that portion due to the later injury as though no prior disability or impairment had existed."

If the injury in 65 OAK 17909 was incurred *after* the injuries in 1960 and 1961—each of which resulted in a 7½ percent permanent disability rating—section 4750 would preclude the board from lumping the 15 percent disability caused by these accidents with the remaining 60 percent disability. Yet, this is exactly what the WCAB did in its final decision now under review. The result of combining the disabilities to reach the 75 percent level was to make the insurance carriers liable to pay Quick a life pension which they would not otherwise have had to pay, since life pension payments are available to a claimant only where the permanent disability rating in a case is 70 percent or higher (Lab. Code, § 4658).

The board, while admitting that it could not rescind or

Travelers Insurance Co., March 28, 1950, to November 19, 1956; and Associated Indemnity Co., November 19, 1956, through the end of the period, September 3, 1963.

amend its decisions in the two specific injury cases,[4] urges that it was not bound by these decisions in resolving the later-decided cumulative injury case because the prior decisions were "arbitrary." The medical evidence, argues the board, established that the back strains suffered in 1960 and 1961 were merely two of the many incidents culminating in degeneration of Quick's back.

If the only decision of the WCAB was its decision in the cumulative injury case, that decision would be in accord with the medical testimony. Regrettably, however, that decision cannot stand. Despite its obvious objective of affording a claimant a proper adjudication of his claims and in clearing away the debris of its own errors in order to reach that end, the WCAB is bound by the basic rules of law and procedure. (*United States Pipe & Foundry Co.* v. *Industrial Acc. Com.,* 201 Cal.App.2d 545, 551 [20 Cal.Rptr. 395] [opinion of Tobriner, J.].) These basic rules of procedure require the board to give res judicata effect to its final decisions. (*French* v. *Rishell,* 40 Cal.2d 477, 479-480 [254 P.2d 26]; *United States Pipe & Foundry Co.* v. *Industrial Acc. Com., supra,* 201 Cal.App.2d 545, 549.) The fact that the WCAB "is not bound by common law or statutory rules of evidence and procedure, may receive hearsay evidence, may proceed informally, and may adopt less stringent rules and regulations than those applicable in court does not alter the applicability of the doctrine of res judicata to its findings." (55 Cal.Jur. 2d, Workmen's Compensation, § 310, p. 348.)

The collateral estoppel branch of the res judicata doctrine applies to decisions of the board. (*French* v. *Rishell, supra,* 40 Cal.2d 477, 479-480, citing to *Bernhard* v. *Bank of America,* 19 Cal.2d 807 [122 P.2d 892].) Under this rule, mutuality of estoppel is not required, and persons not parties to a prior case may assert against a party to such action all facts decided in the prior action. (*Teitelbaum Furs, Inc.* v. *Dominion Ins. Co., Ltd.,* 58 Cal.2d 601, 604 [25 Cal.Rptr. 559. 375 P.2d 439]; *Bernhard* v. *Bank of America, supra,* 19 Cal.2d 807, 812-813.) Thus, the insurance carriers may bind Quick by the decisions in 65 OAK 16734 and 16735 that the injuries to his back in August 1960 and December 1961 were

---

[4]At page 7 of exhibit A to its answer to petition for hearing the WCAB states: "Respondent Appeals Board agrees with petitioners' contention that because no Petition for Reconsideration was filed with respect to the awards in Cases Nos. 16734 and 16735, the Appeals Board cannot disturb the findings made in support thereof, nor can it alter or amend those awards. . . ."

specific injuries each resulting in permanent partial disability.

It follows that the decision in the cumulative injury case is improper since "any injury which produced by itself a definable disability should not be submerged in a series of injuries with indemnity being awarded for repetitive trauma." (*James* v. *Republic Indemnity Co. of America*, 28 C.C.C. 28, 31.) Furthermore, if it should appear that the cumulative injury was subsequent to the 1960-1961 injuries, section 4750 of the Labor Code would preclude the board from considering the prior 7½ percent ratings in determining the liability of the insurers for the subsequent injury.[5]

"This section has been interrpeted to mean that, 'An employer [or his insurer] of a workman who has a permanent physical impairment and who thereafter sustains a compensable injury resulting in permanent disability, is not liable for compensation for the ensuing combined disabilities, but only for that portion of permanent disability which is caused by the last injury.'" (*State Comp. Ins. Fund* v. *Industrial Acc. Com.*, 59 Cal.2d 45, 48-49 [27 Cal.Rptr. 702, 377 P.2d 902]; see also *National Auto. & Cas. Ins. Co.* v. *Industrial Acc. Com.*, 216 Cal.App.2d 204, 209 [30 Cal.Rptr. 685]; *Wolski* v. *Industrial Acc. Com.*, 70 Cal.App.2d 427, 430 [161 P.2d 283].)

The WCAB and the Attorney General in an amicus curiae brief filed in behalf of the Subsequent Injuries Fund contend that cumulative injury dates from 1946 and therefore is prior, not subsequent, to the 1960 and 1961 injuries. This contention must be rejected. Physical harm to an employee does not qualify as an injury for purposes of the subsequent injury statutes until it results in permanent disability. (Lab. Code, §§ 4750, 4751.) There is no indication whatsoever in the record here that Quick was disabled in 1946; therefore for purposes of our inquiry he cannot be considered as injured in 1946.

---

[5]The appropriate method for rating disability in a subsequent injury case is to rate the applicant's over-all permanent disability at the time of the hearing and to determine what percent of this was due to the subsequent injury. (*Subsequent Injuries Fund* v. *Industrial Acc. Com.*, 44 Cal.2d 604, 608 [283 P.2d 1039].) That is what the WCAB did in the instant case. It found that 80 percent of the total 75 percent disability, or a 60 percent disability, was due to exacerbations to Quick's back other than the incidents of August 1960 and December 1961. But it proceeded to make its award on the basis of a 75 percent total disability rather than a 60 percent total disability, thereby requiring the insurers to pay for a life pension.

The insurance carriers contend that Quick's cumulative injury occurred when he was disabled, that is, when he had to quit work September 3, 1963, or perhaps January 2, 1964.[6] For purposes of applying the statute of limitations the courts and the board have accepted the date when the employee is disabled as the date when the cumulative injury occurs. (*Beveridge* v. *Industrial Acc. Com., supra,* 175 Cal.App.2d 592, 595; *Fidelity & Casualty Co.* v. *Industrial Acc. Com.,* 9 C.C.C. 294, 295.) ''In reality the only moment when such injury can be visualized as taking compensative form is the date of last ·exposure, when the cumulative effect causes disability.'' (Tobriner, J., in *Beverage* v. *Industrial Acc. Com., supra,* 175 Cal.App.2d 592, 595.)

Accepting the guidance of the *Beveridge* case, we adopt a similar rule here which fixes what is by necessity a constructive date on which, for the purposes of subsequent injury statutes, a cumulative injury will be deemed to have been incurred. That date is the last day of the period in which the WCAB finds that cumulative injury was received by repetitive exposure to stress or other cause; or, if disability does not appear until yet a later date, the time when the employee becomes disabled.

Any other rule would be most unfair to the employee. We have seen that the date of *injury* cannot be fixed as early as October 1946 in this case—as the Attorney General contends —because Quick was not then disabled. If the time of injury is not fixed at the end of the employee's period of exposure, the only other alternative is to divide up the cumulative injury into segments. This is medically improper; furthermore this technique would, because of a hiatus in the statutes providing for benefits to previously handicapped employees, frequently result in the applicant's failing to receive a life pension even though his permanent disability was rated at 70 percent or more. (Cf. Lab. Code, § 4658.)

The purpose of section 4750 is to encourage hiring of the handicapped by assuring an employer that he will not be liable for combined total disability present after an industrial accident, but only for the portion attributable to the later

---

[6]Between September 3 and January 2 Quick tried to put in a few days' work but found that his back condition rendered him unable to do his job. Whether September 3 or January 2—the day he finally quit work—should be considered the date he was disabled by the cumulative injury is of little importance, since either date places this injury subsequent to the 1960 and 1961 incidents.

accident. (E.g., *State Comp. Ins. Fund* v. *Industrial Acc. Com., supra,* 59 Cal.2d 45, 49.) ▮ However, in order not to discourage the handicapped from seeking work because of the protection denied them by section 4750 (cf. *Subsequent Injuries Fund* v. *Industrial Acc. Com.,* 217 Cal.App.2d 322, 327 [31 Cal.Rptr. 508]; *Pacific Gas & Elec. Co.* v. *Industrial Acc. Com.,* 126 Cal.App.2d 554, 558 [272 P.2d 818]), the Subsequent Injuries Fund was made liable in many cases to pay the benefits the employer avoided liability for under section 4750. But not in all instances. Section 4751, the operative statute, provides that the fund is not liable except where the employee has qualified for a life pension and where *the subsequent injury itself is rated at 35 percent permanent disability or more.*[7]

If the board is permitted to carve up the cumulative injury into segments the result would be unfair to Quick. In that event the board would determine what portion of the cumulative injury occurred prior to Quick's specific injury in 1960 (65 OAK 16734). The evidence would suggest that apparently about 5/6 of the disability, or a rating of 50 percent, existed prior to August 1960. The remaining 1/6, a rating of 10 percent, would be allocated to the period of 1960-1963.[8] The insurance carriers could then assert that the 50 percent disability is a prior injury to the subsequent 10 percent disability

---

[7]Section 4751 provides:

"If an employee who is permanently partially disabled receives a subsequent compensable injury resulting in additional permanent partial disability so that the degree of disability caused by the combination of both disabilities is greater than that which would have resulted from the subsequent injury alone, and the combined effect of the last injury and the previous disability or impairment is a permanent disability equal to 70 percent or more of total, he shall be paid in addition to the compensation due under this code for the permanent partial disability caused by the last injury compensation for the remainder of the combined permanent disability existing after the last injury as provided in this article; provided, that either (a) the previous disability or impairment affected a hand, an arm, a foot, a leg, or an eye, and the permanent disability resulting from the subsequent injury affects the opposite and corresponding member, and such latter permanent disability, when considered alone and without regard to, or adjustment for, the occupation or age of the employee, is equal to 5 percent or more of total, or (b) the permanent disability resulting from the subsequent injury, when considered alone and without regard to or adjustment for the occupation or the age of the employee, is equal to 35 percent or more of total."

[8]This would be the result of stress to the back in 1960-1963 without considering the two specific injuries involved in 65 OAK 16734 and 16735. We have seen that the doctrine of collateral estoppel precludes the board from treating these two injuries as simply two incidents contributing to the cumulative injury. Instead they are to be deemed as separately compensable injuries.

and demand the protection of section 4750. The Subsequent Injuries Fund could assert that the subsequent injury is rated at 10 percent, and since this is well shy of 35 percent, the fund would not be liable at all. Quick would not get his life pension to which he seems entitled.

 Under the rule adopted, the entire cumulative injury —rated at 60 percent—is subsequent to the 1960 and 1961 injuries. Under section 4750, the Dow insurers do not have to pay for a life pension; but, since the subsequent injury well exceeds 35 percent, the Subsequent Injuries Fund must pay Quick his life pension (Lab. Code, § 4751).

If there were any legal way to hold that Quick's cumulative injury existed at the beginning of his exposure to stress— that is, in 1946—such an approach would be advisable, because this approach would give the employee the greatest protection. The cumulative injury would always be *prior* to any specific injury the employee suffered during the years his cumulative injury was developing; section 4750 would not come into play, and the employer would always be liable for the full benefits due for the combined total liability existing when the cumulative injury ultimately disabled the employee. But the statutory provisions prohibit this solution.

Under the rule adopted in this opinion, it is true that there may be circumstances in which a deserving employee will be denied a life pension, but such inequities are inherent in the statutory scheme of section 4751. which expresses the 35 percent requirement. Such inequities are not peculiar to cumulative injury cases, but exist whenever any type of subsequent injury is rated at less than 35 percent disability, and, when combined with prior disabilities, results in total disability of 70 percent or more. The best that we can do in the face of these statutory provisions is to adopt the date of cumulative injury as was done in the *Beveridge* case.

The award here should be annulled insofar as it requires the insurance carriers to pay Quick a life pension and insofar as it dismisses Quick's claim against the Subsequent Injuries Fund, which, as we have seen, may be liable for the life pension.[9]

[9]Both Quick and the fund were parties to the cases concerning the 1960 and 1961 injuries. Consequently it will be res judicata against the fund that Quick suffered prior permanent disability in 1960-1961. The fund will be entitled to a hearing to determine if the cumulative injury, the subsequent injury, exceeds 35 percent. The fund has not been given an opportunity to litigate this matter, since the board never acted on Quick's application to join the fund as a party to 65 OAK 17909.

In all other respects the decision of the WCAB is correct. The major part of the board's brief is devoted to defending its method of apportionment of the benefits owed by the four insurers to Quick. We agree with this part of the board's discussion. No final decision has been made by the board on this matter, aside from the fact that Associated Indemnity is to receive credit for the payments made in the two specific injury cases (65 OAK 16734 and 16735). Neither Quick nor any of the carriers are aggrieved by this procedure. (See generally *Argonaut Ins. Co.* v. *Industrial Acc. Com., supra,* 231 Cal.App.2d 111.)

The board's order in the cumulative injury case is annulled, and it is directed to proceed as indicated in this opinion.

Traynor, C. J., McComb, J., Tobriner, J., Mosk, J., Burke, J., and Sullivan, J., concurred.