[Civ. No. 36487. First Dist., Div. One. Sept. 24, 1976.]

LLOYD G. BOOKOUT, Petitioner, v.
WORKMEN'S COMPENSATION APPEALS BOARD,
PHILLIPS PETROLEUM COMPANY et al., Respondents.

**COUNSEL**

Dolgin, Kully & Jameson and David A. Dolgin for Petitioner.

Evelle J. Younger, Attorney General, B. Franklin Walker, Deputy Attorney General, C. Rex Boyd, Jack W. Shuck and William T. Vinson for Respondents.

**OPINION**

**MOLINARI, P. J.**—Petitioner seeks a writ of review to inquire into and determine the lawfulness of the findings and award and order denying petition for reconsideration of respondent Workmen's Compensation Appeals Board (hereinafter the "Appeals Board"). The Appeals Board determined that petitioner sustained a compensable industrial injury on

March 31, 1972, resulting in a permanent disability of 30½ percent. This determination was based upon a finding that petitioner sustained a permanent disability of 65 percent as a result of the industrial injury, but deducted therefrom a percentage of 34½ percent allocable to a preexisting nonindustrial disability resulting from a heart condition. In view of its determination the Appeals Board found that petitioner was not entitled to subsequent injuries fund benefits under Labor Code section 4751.[1]

## The Injuries

Petitioner, an oil refinery operator for respondent Phillips Petroleum Company for 28 years, sustained a compensable injury to his lower back on March 31, 1972. His back disability was deemed permanent and stationary commencing January 21, 1973. From 1971 until the time of the industrial accident petitioner experienced recurring episodes of angina pectoris and heart irregularity. He had a "flare-up" of the heart condition about one year prior to the industrial accident, remaining on medication for that condition for approximately three months. Notwithstanding his heart condition, petitioner continued to perform his regular duties as an oil refinery operator with the exception of such activities as climbing and heavy lifting. It is undisputed that upon exertion petitioner suffered chest pains and that his heart symptoms worsened upon excessive emotional stress. Surgery was recommended for the back injury but it was declined because of the risk stemming from petitioner's heart condition.

## Petitioner's Disability

The referee requested two separate permanent disability ratings from the rating specialist, i.e., one for normal benefits and one for subsequent injuries fund benefits.

With respect to normal benefits the referee instructed the rating specialist to rate a disability described as follows: "Back disability manifested by pain in the lower back and left leg evaluated as slight in degree, increased on activity, and limiting applicant to semi-sedentary work. Less: Pre-existing disability resulting from a heart condition precluding heavy work activity." Pursuant to these instructions the rating specialist recommended a permanent disability rating "after apportion-

---

[1]Unless otherwise indicated all statutory references are to the Labor Code.

ment" of 30½ percent, computed as follows: Petitioner's back disability was rated at 60 percent standard, modified for age and occupation to 65 percent, less 30 percent standard for the heart disability, modified to 34½ percent for age and occupation.

For purposes of the subsequent injuries fund benefits the referee requested a disability rating as follows: "Back disability manifested by pain in low back and left leg evaluated as slight in degree, increased on activity, and limiting applicant to semi-sedentary work: Heart disability precluding heavy work activity or situations involving excessive emotional stress." The rating specialist rated the back disability at 60 percent, modified for age and occupation to 65 percent, and the heart disability at 10 percent, modified for age and occupation to 12 percent, resulting in a combined permanent disability of 77 percent. Upon the utilization of "multiple tables" the rating specialist arrived at a recommended rating of 70½ percent.

Following the filing of the rating specialist's recommendations a hearing was held wherein the rater was cross-examined by petitioner's counsel. The rating specialist testified that a 60 percent standard rating was given for the back disability and that in computing that rating no additional rating was given for preclusion from heavy work activity by reason of the heart disability since a preclusion from heavy work was already contemplated in the 60 percent rating for limitation to semi-sedentary work. He also testified that in the request for a rating with respect to subsequent injuries fund benefits he was instructed to treat the combined disability as one entity and to report to the referee on that basis. He stated that under this instruction the disability was treated as a single injury to which he applied a multiple table procedure in which the separate factors of disability to separate parts of the body are considered. Accordingly, he testified that an applicant with a back disability and leg disability limiting him to semi-sedentary work and a heart condition precluding him from heavy work results in an overall permanent disability of 60 percent since the factors present "are all part and parcel of the semi-sedentary definition in the schedule."

As respects the heart disability the rating specialist testified that the instructions for purposes of the subsequent injuries fund benefits contained two levels of disability, i.e., the heart disability precluding heavy work activity and that involving emotional stress. He stated that

the heart disability precluding heavy work was included in the rating of 60 percent for the back disability because the specification of semi-sedentary work in the back disability instructions included the limitation on heavy work activity, and that when one disability is a part of another one is not added to the other mathematically, but the higher level of disability is used. That higher level in the present case was stated by the rating specialist to be about 60 percent when considered in relation to petitioner's ability to compete in the open labor market. The rating specialist then testified that the 10 percent standard rating for the heart disability was given for the factor of emotional distress.

The rating specialist testified, further, that he rates according to the referee's instructions; that he did not refer to the normal benefits ratings in determining subsequent injuries fund benefits; and that it is not his function to relate one to the other.

The referee adopted the recommendation of the rating specialist pursuant to the instructions for a disability rating for the normal benefits and found, inter alia, that the industrial injury to petitioner resulted in a permanent disability of 30½ percent. Accordingly, he made an award of permanent disability based thereon. Since it was determined that petitioner's industrial injury had not caused a permanent disability of 35 percent or more as required by section 4751, the referee concluded that petitioner was not entitled to subsequent injuries fund benefits as provided by said statute.

The findings and award made by the referee were adopted by the Appeals Board and became a part of its "Opinion and Order Denying Reconsideration, Granting Reconsideration and Decision after Reconsideration."

*Normal Benefits*

The referee's findings merely state that petitioner suffered a permanent disability of 30½ percent. They make no reference to the preexisting heart condition, the percentage of disability attributable to such heart condition, the percentage of disability attributable to the back injury, whether there was any overlapping of the injuries, and if there was such an overlap the combined percentage of permanent disability. The Report and Recommendation of Referee on Petition for Reconsideration (hereinafter "referee's report") states that petitioner's back disability was

rated at 60 percent standard, modifying to 65 percent, and that said rating was reduced "on the basis of preclusion of heavy work activity by reason of applicant's preexisting heart condition" and that "The heart disability was rated at 30 percent standard, modifying to 34½ percent, which produced a final rating of 30½ percent." Accordingly, it appears that the referee ascribed 34½ percent to the preexisting nonindustrial condition, i.e., the heart disability, and that he deducted this percentage from the back disability percentage of 65 percent.

Labor Code section 4750 provides: "An employee who is suffering from a previous permanent disability or physical impairment and sustains permanent injury thereafter shall not receive from the employer compensation for the later injury in excess of the compensation allowed for such injury when considered by itself and not in conjunction with or in relation to the previous disability or impairment. The employer shall not be liable for compensation to such an employee for the combined disability, but only for that portion due to the later injury as though no prior disability or impairment had existed."

Section 4750 ". . . has been interpreted to mean that 'An employer [or his insurer] of a workman who has a permanent physical impairment and who thereafter sustains a compensable injury resulting in permanent disability, is not liable for compensation for the ensuing combined disabilities, but only for that portion of permanent disability which is caused by the last injury.' [Citations.]" (*State Compensation Ins. Fund* v. *Industrial Acc. Com. (Hutchinson)*, 59 Cal.2d 45, 48-49 [27 Cal.Rptr. 702, 377 P.2d 902].) ██ The fact that injuries occur to two different anatomical parts of the body does not in itself preclude apportionment. (*Mercier* v. *Workers' Comp. Appeals Bd.*, 16 Cal.3d 711, 714 [129 Cal.Rptr. 161, 548 P.2d 361]; *State Compensation Ins. Fund* v. *Industrial Acc. Com. (Hutchinson)*, *supra*, at pp. 49-52.)

██ The foregoing rule is subject to the limitation that the disability resulting from the subsequent injury is compensable only to the extent that it can be said that the employee's earning capacity or ability to compete in the open labor market has been decreased from what it was immediately prior to the second injury. (*Mercier* v. *Workers' Comp. Appeals Bd.*, *supra*, 16 Cal.3d 711, 714; *State Compensation Ins. Fund* v. *Industrial Acc. Com. (Hutchinson)*, *supra*, 59 Cal.2d 45, 53. Accordingly, if successive injuries produce separate and independent disabilities then each is properly rated separately without concern for the theoretical 100

percent assigned to "total" disability, but if the subsequent injury, even if to a different part of the body, does not alter the earning capacity of the employee or his ability to compete in the labor market it is not compensable. (*Mercier* v. *Workers' Comp. Appeals Bd., supra*; *State Compensation Ins. Fund* v. *Industrial Acc. Com. (Hutchinson), supra.*) ▆ However, where the two disabilities are not separate and independent, the employee is not to be compensated to the extent that the second injury did not further reduce his earning capacity nor his ability to compete in the open labor market. (*Mercier* v. *Workers' Comp. Appeals Bd., supra,* at pp. 714, 715-716; *State Compensation Ins. Fund* v. *Industrial Acc. Com. (Hutchinson), supra.*)

Where the disability from the later injury and the prior disability are not separate and independent in that there is a duplication of the factors of disability resulting from each injury we have a situation involving "overlapping" disabilities. Accordingly, to the extent that the factors of disability overlap, the second injury does not further reduce the employee's earning capacity or his ability to compete in the open labor market. Therefore, if an award were made for the second injury wholly without consideration of the prior disability it would amount to double compensation or a "pyramiding" of compensation. (See 2 Hanna, Cal. Law of Employee Injuries and Workmen's Compensation (2d ed.) § 14.03(2)(b).)

▆ "The question of overlapping disabilities is one of fact . . . ." (*Mercier* v. *Workers' Comp. Appeals Bd., supra,* 16 Cal.3d 711, 716.) ▆ Overlapping disabilities may be partial or total and "When all factors of disability attributable to the first injury are included in the factors attributable to the second, there is total overlap." (*Mercier* v. *Workers' Comp. Appeals Bd., supra.*)

In the computation of overlapping disabilities—either partial or total—the percentage of disability due to the prior injury must be subtracted from the percentage of combined disability; the difference then represents the compensable disability allocable to the subsequent injury. (*Mercier* v. *Workers' Comp. Appeals Bd., supra,* 16 Cal.3d 711, 716; *Dow Chemical Co.* v. *Workmen's Comp. App. Bd.,* 67 Cal.2d 483, 492 [62 Cal.Rptr. 757, 432 P.2d 365]; *State Compensation Ins. Fund* v. *Industrial Acc. Com. (Hutchinson), supra,* 59 Cal.2d 45, 53.) ▆ In situations where the injuries from the first accident or injury have healed or improved prior to the second, the percentage of disability to be

subtracted is based on the employee's condition immediately prior to the second injury. (*Mercier* v. *Workers' Comp. Appeals Bd., supra,* fn. 2; *State Compensation Ins. Fund* v. *Industrial Acc. Com. (Hutchinson), supra,* at p. 56.)

■ In the instant case, as is indicated by the referee's report, the referee concluded from the evidence adduced that petitioner's back disability and the preexisting overlapping impairment resulting from the heart condition precluding heavy work activity constituted overlapping disabilities. This determination was a question of fact to be determined by the fact finder and is supported by substantial evidence in the record.

Petitioner does not contend that the two disabilities are separate and distinct and therefore nonapportionable. It is his contention that the referee erred in the method selected by him in apportioning for overlapping disability and in instructing the rating specialist to apportion for the preexisting overlapping disability on "avoidance of heavy work." Petitioner asserts that the rating specialist should have been instructed that the prior overlapping disability was a preclusion from "climbing stairs and heavy lifting."

The evidence in the present case as to the extent of petitioner's recovery from the preexisting heart condition is conflicting. ■ However, there is ample evidence that petitioner's heart condition required the avoidance of a certain level of physical exertion rather than the avoidance of a few specific activities such as climbing and heavy lifting as is contended by petitioner. In his petition petitioner admits that the report of his treating physician (which is not part of the record) states that petitioner had recovered from the heart attack but that he was to avoid "continuous heavy exertion." We observe that the rating specialist testified that under the "Guideline for Work Capacity" the designation "Disability Precluding Heavy Work" contemplates that "the individual has lost approximately half of his pre-injury capacity for performing such activities as bending, stooping, lifting, pushing, pulling, and climbing or other activites involving comparable physical effort."

Petitioner argues that notwithstanding the medical evidence he was fully recovered from his heart condition prior to his subsequent industrial injury. He contends that in light of his physician's report and his own testimony that he was able to perform all of his work except climbing and heavy lifting, the restrictions placed upon him by other

examining physicians amounted to an invalid prophylactic restriction. (See *Amico* v. *Workmen's Comp. Appeals Bd.,* 43 Cal.App.3d 592 [117 Cal.Rptr. 831]; *Gross* v. *Workmen's Comp. Appeals Bd.,* 44 Cal.App.3d 397 [118 Cal.Rptr. 609].) *Amico* and *Gross* stand for the proposition that a prophylactic restriction, though rateable for the purpose of apportionment, may not be retroactively applied to an otherwise nonexistent previous disability. But here there was evidence of a previous disability which existed at the time of the industrial injury. The treating physician's admonition to avoid "continuous heavy exertion" suffices to remove this case from the doctrine of prophylactic restrictions when considered in conjunction with the other medical testimony and justifies the finding of the referee that petitioner was precluded as a result of his condition from heavy work and not merely from climbing and heavy lifting.

It is apparent from the record and the referee's finding that, for the purpose of determining the disability percentage to be subtracted from the combined disability, petitioner's condition was based on that existing immediately prior to the second injury. We also observe that the factor of disability precluding heavy work activity and existing immediately prior to the second injury is included among the factors attributable to the second injury. The instruction from the referee to the rating specialist with respect to normal benefits produced a permanent disability rating of 65 percent for the second injury, i.e., the back injury. It also produced a permanent disability rating of 34½ percent for the preexisting disability resulting from the heart condition limited to the factor of preclusion from heavy work activity. This factor was included in the rating for the back injury. Accordingly, because there was a duplication of this factor of disability resulting from each injury there is a total overlap.

Adverting to the instruction by the referee to the rating specialist with respect to subsequent injuries fund benefits, we observe that it produces a rating of 65 percent for the back injury and a rating of 12 percent for the heart disability or a combined disability of 77 percent reduced to 70½ percent upon an application of the "multiple tables."

The rating specialist testified that the "multiple tables" are used when there are several factors of disability arising out of a single injury. In this connection we note that the referee's report, in its analysis with respect to subsequent injuries fund benefits, recognizes that "Applicant's overall permanent disability was rated at 70½ percent" when based on the injuries considered as a combined disability and as one entity.

With regard to the instructions respecting subsequent injuries fund benefits, the rating specialist testified that he rated the injuries specified in these instructions independent of and without consideration to the instructions given him for the purpose of normal benefits rating. He testified that the two descriptions of heart disability, i.e., preclusion from heavy work activity and "situations involving excessive emotional distress" are two separate descriptions of disability arising out of the heart disability that are to be rated separately but that since the factor of preclusion from heavy work is totally present in the rating for the back injury it was included in the 65 percent rating for the back injury. Accordingly, he testified that the 12 percent rating which he attributed to the heart condition was allocated solely to the factor of "situations involving excessive emotional distress." This factor of disability, under the evidence adduced, was present in the preexisting heart disability. There is undisputed evidence in the record that prior to the industrial injury petitioner's heart symptoms worsened upon excessive emotional distress.

■ However, implicit in the referee's findings is a determination that the factor of heart disability involving excessive emotional distress is not an overlapping disability and that such factor of disability was not aggravated by the later injury. It is apparent from the referee's findings that the referee considered this factor of disability to be a separate disability unrelated to the later injury. These determinations are supported by substantial evidence. Accordingly, there is no apportionment for this factor of disability and under the provisions of section 4750 petitioner's employer is not liable to petitioner for compensation for such factor of disability.

Accordingly, upon a reconciliation of the referee's findings predicated upon the percentages of disability rated by the rating specialist, it must be concluded that the percentage of overall disability following the back injury was 77 percent, i.e., the 65 percent rating for the back injury which included the overlapping factor of preclusion from heavy work plus the 12 percent disability attributed to the separate and preexisting heart disability factor precluding situations involving excessive emotional distress.

The applicable principles require a deduction from the combined disability of 77 percent of the 34½ percent of disability attributable to the overlapping factor of disability precluding heavy work and the 12

percent of disability attributable to the previous nonindustrial heart disability precluding situations involving excessive emotional distress, or a total deduction of 46½ percent.

The difference between the 46½ percent disability attributable to the preexisting heart condition and the 77 percent overall disability following the later injury results in a percentage of 30½ percent which is the limit of liability for the later industrial injury. We thus arrive, coincidentally, to the same percentage of permanent disability as did the referee as respects normal benefits. The referee apparently excluded the nonindustrial and overlapping 12 percent heart disability from his computations in determining that the overall disability was 65 percent and that the percentage of preexisting disability to be deducted from the overall disability was 34½ percent.

We therefore conclude that the Appeals Board properly determined that the percentage of permanent disability resulting from the compensable industrial injury was 30½ percent.

■ As respects whether petitioner's earning capacity or ability to compete in the open market has been decreased from what it was immediately prior to the back injury, we conclude that an inferential finding may be made that there was such a decrease from the findings as to the percentages of disability ascribed to the preexisting disability and the subsequent injury. Accordingly, the disability resulting from the subsequent injury is compensable to the extent of such decrease in petitioner's earning capacity or ability to compete in the open labor market. Moreover, the referee noted in the referee's report that he had concluded that because of the overlapping disabilities petitioner's earning capacity and ability to compete in the labor market were decreased by the subsequent injury and that petitioner was entitled to be compensated for the subsequent injury to the extent of such decrease.

### Subsequent Injuries Fund Benefits

Section 4751 provides: "If an employee who is permanently partially disabled receives a subsequent compensable injury resulting in additional permanent partial disability so that the degree of disability caused by the combination of both disabilities is greater than that which would have resulted from the subsequent injury alone, and the combined effect of the last injury and the previous disability or impairment is a

permanent disability equal to 70 percent or more of total, he shall be paid in addition to the compensation due under this code for the permanent partial disability caused by the last injury compensation for the remainder of the combined permanent disability existing after the last injury as provided in this article provided, that either (a) the previous disability or impairment affected a hand, an arm, a foot, a leg, or an eye, and the permanent disability resulting from the subsequent injury affects the opposite and corresponding member, and such latter permanent disability, when considered alone and without regard to, or adjustment for, the occupation or age of the employee, is equal to 5 percent or more of the total, or (b) the permanent disability resulting from the subsequent injury, when considered alone and without regard to or adjustment for the occupation or age of the employee, is equal to 35 percent or more of the total."

Petitioner contends that there should be no apportionment for overlapping disabilities concerning eligibility for payments under the subsequent injuries fund, and that the 5 percent provision of section 4751 should apply instead of the 35 percent provision. ■ The 5 percent provision is clearly not applicable since the previous disability in the present case is not to a hand, arm, foot, leg, or an eye. There is no merit to petitioner's contention that his preexisting heart condition affected his right leg. Although petitioner's preexisting heart condition limited his activities, including climbing, which requires the use of his legs, the climbing limitation was due to the heart pathology and not upon any pathology or impairment of the right leg.

The applicable percentage is the 35 percent disability threshold. Petitioner was denied subsequent injuries fund benefits because under the formula employed by the referee in determining normal benefits the referee concluded that the permanent disability resulting from the industrial injury did not equal the requisite 35 percent disability. ■ This conclusion is erroneous.

Subdivision (b) of section 4751 provides that the permanent disability resulting from the subsequent injury, *when considered alone* and without regard to adjustment for age and occupation, must be more than 35 percent of the total disability. Here the permanent disability resulting from the subsequent injury, standing alone and without regard to adjustment for age and occupation, is 60 percent.

We advert to the other essential requirements of section 4751. The first is that the employee who is "permanently partially disabled" must receive a subsequent compensable injury. Under this requirement the previous condition must be actually "labor disabling." (*Subsequent Injuries Fund* v. *Industrial Acc. Com.,* 56 Cal.2d 842, 845 [17 Cal.Rptr. 144, 366 P.2d 496].) However, the prior injury need not be reflected in an actual disability in the form of a loss of earnings, but should be of a kind which would support an award of permanent partial disability. (*Subsequent Injuries Fund* v. *Industrial Acc. Com., supra*; see *Moyer* v. *Workmen's Comp. Appeals Bd.,* 24 Cal.App.3d 650, 658 [100 Cal.Rptr. 540].) It is undisputed that had the heart disability in the present case been industrially incurred it could support an award of permanent partial disability.

The second requirement is that the combined disabilities are greater than that which would have resulted from the subsequent injury alone. In the present case the percentage of combined disability was determined to be 77 percent while that attributed to the subsequent injury alone was determined to be 65 percent, adjusted for age and occupation.[2] The combined disability determination also meets the third requirement of section 4751, i.e., that the combined effect of both disabilities, i.e., that resulting from the prior injury or condition and that resulting from the subsequent injury, is a 70 percent or more disability.

Therefore, since all the requirements of section 4751 have been met petitioner is entitled to indemnity under the subsequent injuries fund. That indemnity, as provided in section 4751, is compensation based on an award of 46½ percent computed by deducting the 30½ percent rating attributed to the subsequent industrial injury from the 77 percent disability rating attributed to the combined disability. (*Subsequent Injuries Fund* v. *Ind. Acc. Com.,* 44 Cal.2d 604, 609-610 [283 P.2d 1039]; *Subsequent etc. Fund* v. *Ind. Acc. Com.,* 39 Cal.2d 83, 89-90 [244 P.2d 889]; see 2 Hanna, Cal. Law of Employee Injuries and Workmen's Compensation (2d ed.) § 14.05(3) pp. 14-42.) The difference of 46½ percent is the percentage attributable to the preexisting disability or

---

[2]The 70½ percentage of combined disability rated by the referee for all the factors of disability was arrived at upon the use of multiple tables. As testified to by the referee this determination was made upon a consideration of the several factors of disability as arising out of a *single* injury and not from the combination of a preexisting injury or condition and a subsequent injury. The referee, himself, recognized that the 70½ percent disability rating was "based on the injuries considered as a combined disability *and as one entity.*" (Italics added.)

impairment and is the percentage of liability of the Subsequent Injuries Fund.

The findings and award and order denying petition for reconsideration are annulled and the case is remanded to the Appeals Board to take such further proceedings as may be necessary in accordance with this opinion.

Sims, J., and Elkington, J., concurred.

The petition of respondent Subsequent Injuries Fund for a hearing by the Supreme Court was denied December 2, 1976.