Opinion
COMPTON, J.
Petitioners Rootenberg & Getz and its workers’ compensation insurance carrier, Fremont Indemnity Company (hereinafter Fremont), contend that the Workers’ Compensation Appeals Board (Board) erred in annulling the decision of the workers’ compensation judge which apportioned one-half of the injured worker’s permanent disability as nonindustrial and in lieu thereof finding that all of the injured worker’s permanent disability was industrially caused as the result of a specific industrial injury (see Lab. Code, § 3208.1) on October 25, 1976.
I
Respondent Eleanor L. Harkavy made the two claims before the Board. In her first claim she alleged a cumulative trauma injury (see Lab. Code, § 3208.1) while employed for various employers, including Rootenberg & Getz, from October 25, 1971 through October 25, 1976, wherein she sustained injury arising out of and occurring in the course of said employment to her heart, internal organs and emotional state.[1] The second claim alleged a specific injury (see Lab. Code, § 3208.1) to her heart, internal organs and emotional state on October 25, 1976, while employed by Rootenberg & Getz. Rootenberg & Getz employed Harkavy commencing in July 1975 until the date of the alleged specific injury on October 25, 1976. On or about the date of the alleged specific injury, Harkavy suffered a myocardial infarction (heart attack).
Harkavy’s job duties for Rootenberg & Getz were as an accountant which took her out of the office a great deal of the time preparing tax reports and financial reports for Rootenberg & Getz’s clients. Much of *269 her work was directed towards deadlines, and it was the quarterly October 31 deadline she was working towards when her specific injury occurred on October 25, 1976.
Harkavy apparently worked without symptoms, pain or discomfort or evidence of disability through October 21, 1976. On Friday, October 22, 1976, Harkavy did not go to work because she was not feeling well. Her complaints that day were fatigue and a heaviness in her chest. The next day, a Saturday, she accompanied a friend and drove to Santa Maria to visit some other friends. There is no evidence to indicate Harkavy did anything out of the ordinary that day. She smoked no more than usual. Sunday evening Harkavy complained of shortness of breath and a heaviness in her chest. The following morning, Monday, October 25, 1976, she was awakened with the symptoms of the previous evening accompanied by chest pain. Harkavy went to work that morning, visited some clients, and at noon went to the emergency room at Kaiser Permanente Hospital (Kaiser). She was not admitted. She was advised at Kaiser that it was probably indigestion and that she should go home and rest. Thereafter, Harkavy did not go home but visited some more clients that afternoon and experienced a worsening of the symptoms (i.e., chest pain and shortness of breath). She finished work at around 5:30 p.m. Late that night, at approximately 1 a.m., she went again to Kaiser where she was again told it was indigestion and told to go home and rest. She went home but her symptoms worsened and around 6 a.m. on Tuesday, October 26, 1976, she returned to the Kaiser emergency room. She was told she had suffered a heart attack and was admitted to the hospital. Harkavy was hospitalized from October 26 through November 8, 1976.
In his medical report of October 26, 1976, Arthur Unger, M.D., a physician at Kaiser, diagnosed Harkavy as having suffered an “[a]cute anterior myocardial infarction” as well as noting histories of cigarette smoking and mild hypertension. Dr. Unger reported she has had “[occasional high blood pressure for five years for which she takes Regroton Vi pill three times per week,” Harkavy’s cigarette smoking averaged two packs a day,[2] she was also mildly obese, and her father had suffered a heart attack at 61 and her mother had borderline diabetes.
Harkavy’s examining physician, Reuben R. Merliss, M.D., noted in his report of April 5, 1977, that Harkavy had suffered an infarct which was *270 precipitated by “two different occupational factors. One was a prolonged tension and anxiety of her work, which accelerated the arteriosclerosis, bringing on the infarct sooner than it would have occurred otherwise. The second was the fact that the infarct went unrecognized and during the early stages the patient worked, aggravating the infarct substantially. If the initial pains were pre-infarctional angina, it could very well be that her work just prior to her hospitalization had precipitated the infarct.” “Under all circumstances” Dr. Merliss believed “the infarction and all of its disability is industrial.”
Michael S. Wallack, M.D., petitioners’ examining physician, took an opposite view in his report of June 28, 1977. Although he agreed that Harkavy has arteriosclerotic heart disease, Dr. Wallack then opined there is “no objective evidence to justify continuing trauma on an industrial basis.” Concerning the infarct, Dr. Wallack stated that while it is difficult to ascertain when the infarct began, “[i]n all likelihood, the events which transpired over that period, would have occurred irrespective of work activities on 10/25/76.”
When the matter came to hearing, Harkavy elected to proceed against Rootenberg & Getz and Fremont on the cumulative trauma injury pursuant to Labor Code section 5500.5. Under this procedure, Harkavy need only prove her case on the cumulative trauma injury regarding Rootenberg & Getz. Under the terms of Labor Code section 5500.5, if an award is made against Rootenberg & Getz and Fremont on the cumulative trauma claim, it can proceed for contribution against the other employers and carriers within the term of the five-year liability period of Labor Code section 5500.5. (Lab. Code, § 5500.5, subd. (e).)
Following a hearing before the workers’ compensation judge, a recommended permanent disability rating issued for the October 25, 1976, injury, apportioning 50 percent of the heart disability to the specific injury and 50 percent to nonindustrial factors. A findings and award to this effect was originally issued on November 14, 1977. At the same time, the workers’ compensation judge issued a findings and award with respect to the cumulative trauma injury that Harkavy did not sustain injury arising out of and occurring in the course of her employment.
However, on December 8, 1977, the workers’ compensation judge vacated the findings and awards in both cases as a procedural error had occurred. After further proceedings, the workers’ compensation judge *271 reissued the findings and award with respect to the specific injury of October 25, 1976. This new findings and award issued on March 24, 1978. This reissued award still allowed for 50 percent apportionment of the permanent disability as nonindustrial. As to the cumulative trauma injury, the workers’ compensation judge ordered that case off calendar.
Harkavy then filed with the Board a petition for reconsideration on the specific injury case. In its “Opinion and Order Granting Reconsideration on Decision After Reconsideration,” the Board in a two-to-one decision reversed the trial judge on the issue of apportionment. The majority disallowed any apportionment. The Board’s majority held that the workers’ compensation judge had apportioned on the basis of causation, which was an incorrect legal principle. The dissenting opinion urged that apportionment to causation be allowed in cases such as the present one where there are substantial nonindustrial risk factors (i.e., cigarette smoking).
II
Petitioners contend that the Board erred in finding that there was no apportionment, “The statutes governing apportionment generally are Labor Code sections 4663 and 4750. Their purpose and limitations are cogently stated in Gardner v. Industrial Acc. Com., 28 Cal.App.2d 682, 684 [83 P.2d 295]: ‘the Industrial Accident Commission is not authorized, in computing the percentage of permanent disability of an employee caused by an industrial injury, to include any percentage of such disability attributable to a prior industrial or nonindustrial disease or injury; nor is it justified in including in an award any amount as compensation for the disability attributable solely to the prior injury or disease and for which the employment was in no wise [sic] responsible.’ ” (State Comp. Ins. Fund v. Industrial Acc. Com. (Quick) (1961) 56 Cal.2d 681, 684 [16 Cal.Rptr. 359, 365 P.2d 415]; fns. omitted.)
“Under both sections the employer is liable to the extent the industrial injury accelerates, aggravates or ‘lights’ up the preexisting disability, condition or impairment. (Franklin, supra, 79 Cal.App.3d at pp. 237, 242-245 [145 Cal.Rptr. 22]; Dorman v. Workers’ Comp. Appeals Bd., supra, 78 Cal.App.3d 1009, 1018 [144 Cal.Rptr. 573]; Bstandig v. Workers’ Comp. Appeals Bd., supra, 68 Cal.App.3d 988, 997 [137 Cal.Rptr. 713].) Both sections seek to avoid the employer from being charged with permanent disability unrelated to the industrial injury. (Franklin, supra, *272 79 Cal.App.3d 224, 235-236.) Further, neither section permits apportionment to mere pathology but only apportionment to disability. (Franklin, supra.)
“Under section 4663, the employer is not liable to the extent the present permanent disability is actually related to the natural progression of the preexisting nonindustrial condition. (Franklin, supra, at pp. 243-246.) For apportionment under section 4663, unlike section 4750 . . ., the preexisting condition need not be symptomatic or disabling at the time of the industrial injury. (Ibid.)
“Section 4750 is designed to ensure that an employer is not charged with the disability which preexisted the industrial injury. (Franklin, supra, at p. 236.) Clearly, section 4750 by its terms only deals with preexisting disabilities as opposed to asymptomatic and nondisabling conditions covered by section 4663.” (Callahan v. Workers’ Comp. Appeals Bd. (1978) 85 Cal.App.3d 621, 629 [149 CaI.Rptr. 647]; fn. omitted.)
Labor Code section 4750 provides: “An employee who is suffering from a previous permanent disability or physical impairment and sustains permanent injury thereafter shall not receive from the employer compensation for the later injury in excess of the compensation allowed for such injury when considered by itself and not in conjunction with or in relation to the previous disability or impairment.
“The employer shall not be liable for compensation to such an employee for the combined disability, but only for that portion due to the later injury as though no prior disability or impairment had existed.”
“A permanent disability is one which causes impairment of earning capacity, impairment of the normal use of a member, or a competitive handicap in the open labor market. (State Compensation Ins. Fund v. Industrial Acc. Com. (Hutchinson), supra, 59 Cal.2d 45, 52 [27 Cal.Rptr. 702, 377 P.2d 902]; Subsequent Injuries Fund v. Industrial Acc. Com. (Allen) (1961) 56 Cal.2d 842, 845-846 [17 Cal.Rptr. 144, 366 P.2d 496]; Moyer v. Workmen’s Comp. Appeals Bd. (1972) 24 Cal.App.3d 650, 657 [100 Cal.Rptr. 540].) The previous condition, as to which apportionment is sought, must be actually ‘labor disabling.’ (Subsequent Injuries Fund v. Industrial Acc. Com. (Allen), supra, 56 Cal.2d 842, 845-846; Ferguson v. Industrial Acc. Com., supra, 50 Cal.2d 469, 477 [326 P.2d 145]; Bookout v. Workmen’s Comp. Appeals Bd. (1976) 62 *273 Cal.App.3d 214, 229 [132 Cal.Rptr. 864].) ‘While the permanent partial disability need not have existed prior to work exposure (Dow Chemical Co. v. Workmen’s Comp. App. Bd., supra, [67 Cal.2d 483,] fn. 9 at p. 495 [62 Cal.Rptr. 757, 432 P.2d 365]) nor need it be of industrial origin, known to the claimant at the time of the subsequent injury, or the subject of a prior rating (Subsequent Injuries Fund v. Workmen’s Comp. App. Bd. (1970) 2 Cal.3d 56, 62 [84 Cal.Rptr. 140, 465 P.2d 28]), or known to the employer (Ferguson v. Industrial Acc. Com., supra, 50 Cal.2d 469, 470), nevertheless it must antedate the subsequent injury {Subsequent Injuries Fund v. Industrial Acc. Com. (1964) 226 Cal.App.2d 136, 145 [37 Cal.Rptr. 844]) and it must be permanent in character (Dow Chemical Co. v. Workmen’s Comp. App. Bd., supra, 61 Cal.2d 483, 492; Subsequent Injuries Fund v. Industrial Acc. Com., supra, 226 Cal.App.2d 136, 143-144). Although the prior disability need not be reflected in the form of loss of earnings, if it is not, it must be of a kind upon which an award for partial permanent disability could be made had it been industry caused. This is necessary to distinguish [it] from a “lighting up” aggravation, or acceleration of a preexisting physical condition where the employer is to be held liable for the whole. (Ferguson v. Industrial Acc. Com., supra, 50 Cal.2d 469, 477-478; Subsequent Injuries Fund v. Industrial Acc. Com., supra, 56 Cal.2d 842, 845.)’ (Brown v. Workmen’s Comp. Appeals Bd., supra, 20 Cal.App.3d 903, 914-915 [98 Cal.Rptr. 96]; see also Bookout v. Workmen’s Comp. Appeals Bd., supra, 62 Cal.App.3d 214, 229 [132 Cal.Rptr. 864].) Further, the preexisting disability need not have interfered with the employee’s ability to work at his employment in the particular field in which he was working at the time of the subsequent industrial injury. (Subsequent Injuries Fund v. Industrial Acc. Com. (Allen), supra, 56 Cal.2d 842, 845-846; Ferguson v. Industrial Acc. Com., supra, 50 Cal.2d 469, 477; Moyer v. Workmen’s Comp. Appeals Bd, supra, 24 Cal.App.3d 650, 658 [100 Cal.Rptr. 540].) The ability of the injured to carry on some type of gainful employment under work conditions congenial to the preexisting disability does not require a finding that the preexisting disability does not exist. {Subsequent Injuries Fund v. Ind. Acc. Com. (Baldes) (1960) 53 Cal.2d 392, 402 [1 Cal.Rptr. 833, 348 P.2d 193].)” (Franklin v. Workers’ Comp. Appeals Bd. (1978) 79 Cal.App.3d 224, 237-238 [145 Cal.Rptr. 22].)
Prior to the date of the specific injury on October 25, 1976 (the specific injury being the fact that the work by Harkavy on that day either aggravated or precipitated the myocardial infarction) there appears to have been preexisting symptomatology on the part of Harkavy. That is, if *274 there was no cumulative trauma injury and only the specific, then the symptomatology that Harkavy had before the specific injury was on a nonindustrial basis. Such a symptomatology would seem to indicate that prior to the industrial specific injury on October 25, 1976, Harkavy had a preexisting disability. (See Moyer v. Workmen’s Comp. Appeals Bd. (1972) 24 Cal.App.3d 650, 657-660 [100 Cal.Rptr. 540].)
The other legal basis for apportionment is established by Labor Code section 4663, which provides: “In case of aggravation of any disease existing prior to a compensable injury, compensation shall be allowed only for the proportion of the disability due to the aggravation of such prior disease which is reasonably attributed to the injury.”
“[I]t is firmly established that section 4663 mandates the apportionment of the employee’s disability, not apportionment among the causes of his disability. This principle requires that apportionment be applied only in those situations in which the worker’s disability would have occurred even without the industrial aggravation, as part of the normal progress of his preexisting disease. (E.g., Ballard v.. Workmen’s Comp. App. Bd., supra, 3 Cal.3d 832, 837 [92 Cal.Rptr. 1, 478 P.2d 937]; Granado v. Workmen’s Comp. App. Bd., supra, 69 Cal.2d 399, 401 [71 Cal.Rptr. 678, 445 P.2d 294]; Zemke v. Workmen’s Comp. App. Bd., supra, 68 Cal.2d 794, 796 [69 Cal.Rptr. 88, 441 P.2d 928]; Berry v. Workmen’s Comp. App. Bd., supra, 68 Cal.2d 786, 789 [69 Cal.Rptr. 68, 441 P.2d 908]; Reynolds Elec. etc. Co. v. Workmen’s Comp. App. Bd., supra, 65 Cal.2d 438, 442-443 [55 Cal.Rptr. 254, 421 P.2d 102].) The preexisting disease need not be symptomatic and disabling at time of industrial injury, so long as it has manifested itself by the time claimant’s permanent disability has reached a stationary ratable stage; however, a projection that, but for the industrial aggravation disability would have occurred anyway at ‘some indefinite future time,’ is not enough to support the apportionment of a disability. (Franklin v. Workers’ Comp. Appeals Bd., supra, 79 Cal.App.3d 224, 243, fn. 6; Gross v. Workmen’s Comp. Appeals Bd., 44 Cal.App.3d 397, 403 [118 Cal.Rptr. 609].)” (Duthie v. Workers’ Comp. Appeals Bd. (1978) 86 Cal.App.3d 721, 728 [150 Cal.Rptr. 530]; fns. omitted.)
In apportioning permanent disability under Labor Code section 4663 in the heart disease/infarct situation, Franklin, supra, outlined the following procedure:
*275 “For purposes of further clarification, the following procedure should be followed in apportioning Franklin’s disability pursuant to section 4663—aggravation of prior disease:
“(a) All the factors of disability resulting from the heart condition must be determined in order to ascertain the entire permanent disability. (See Hegglin v. Workmen’s Comp. App. Bd. (1971) 4 Cal.3d 162, 171-172 [93 Cal.Rptr. 15, 480 P.2d 967].)
“(b) Determination of apportionment pursuant to section 4663.

“Step One:

“What disability is due to the infarct and its effect on the underlying heart disease? All of this disability is compensable. Here, since Dr. Smolens says the infarct would have occurred in three years absent the industrial exposure, it appears the industrial exposure accelerated the occurrence of the infarct. All the disability related to the infarct is compensable since the industrial exposure is in fact the cause of this aspect of the disability. If all of Franklin’s present disability rating can be accounted by the disability from the infarct, then there is no apportionment of the award and the inquiry regarding apportionment pursuant to section 4663 is ended.

“Step Two:

“What disability does Franklin have due to the underlying heart disease irrespective of the infarct?

“Step Three:

“Subtracting the industrial aggravation of the underlying heart disease, would the residual heart disease give rise to any disability? If the answer is ‘no,’ there is no apportionment.

“Step Four:

“If the answer in step three is ‘yes,’ then what would be the residual heart disease disability after subtracting the industrial aggravation? This disability is not the liability of the employer and should not be included in calculating the permanent disability award.

*276
“Step Five:

“The factors of infarct disability must then be ‘combined’ with the factors of the industrial portion of the heart disease to achieve a single disability rating. . . .” {Franklin, supra, 79 Cal. App.3d at pp. 248-249.)
In applying the steps enunciated in Franklin there also must be considered whether the work exposure on October 25, 1976 precipitated the infarct or merely aggravated the effects of the infarct which was occurring independently of industrial factors. (See Franklin, supra, 19 Cal.App.3d at p. 247, fn. 9.)
III
The issue of apportionment needs further consideration by the Board in light of the court’s discussion herein.
The award and the Board’s opinion and order granting reconsideration and decision after reconsideration are annulled as they pertain to apportionment, and the matter remanded to the Board for further proceedings consistent with this opinion.
Fleming, Acting P. J., and Beach, J., concurred.
The petition of respondent Harkavy for a hearing by the Supreme Court was denied August 29, 1979.

Under Labor Code section 5500.5, liability in cumulative trauma injuries is limited to the last five years of employment and is not apportionable to prior industrial exposure. (Flesher v. Workers’ Comp. Appeals Bd. (1979) 23 Cal.3d 322 [152 Cal.Rptr. 459, 590 P.2d 35].)

Harkavy testified, however, that prior to the infarct she “lit up” only about a pack and a half a day.