[Civ. No. 51762: Second Dist., Div. Three. Mar. 30, 1978.]

CECELIA L. FRANKLIN, Petitioner, v.
WORKERS' COMPENSATION APPEALS BOARD,
COUNTY OF LOS ANGELES/USC MEDICAL CENTER et al.,
Respondents;
SUBSEQUENT INJURIES FUND, Real Party in Interest.

[Civ. No. 51781. Second Dist., Div. Three. Mar. 30, 1978.]

SUBSEQUENT INJURIES FUND, Petitioner, v.
WORKERS' COMPENSATION APPEALS BOARD and
COUNTY OF LOS ANGELES/USC MEDICAL CENTER,
Respondents;
CECELIA L. FRANKLIN, Real Party in Interest.

228

COUNSEL

Geffner & Satzman and Robert Goldstein for Petitioner in No. 51762 and for Real Party in Interest in No. 51781.

Evelle J. Younger, Attorney General, and Norman B. Peek, Deputy Attorney General, for Petitioner in No. 51781 and for Real Party in Interest in No. 51762.

John H. Larson, County Counsel, James E. Garland, Deputy County Counsel, Milton J. Litvin, and Robert A. La Porta for Respondents.

COBEY, Acting P. J.—Cecelia L. Franklin, born November 29, 1938, sustained a cumulative trauma injury to her heart, arising out of and occurring in the course of her employment from January 2, 1957, through November 17, 1973, while employed as a registered nurse and attendant by the County of Los Angeles/University of Southern California Medical Center (County). Franklin sustained a myocardial infarct on November 17, 1973.

On reconsideration the Workers' Compensation Appeals Board (Board) found that Franklin's heart disability established a 79 rating. The Board also found that one-half of Franklin's disability preexisted her industrial injury. Accordingly, the Board awarded 39½ percent disability against County, her employer, and also awarded Franklin benefits against the Subsequent Injuries Fund (Lab. Code, § 4751 et seq.)

Franklin contends that there should be no apportionment and that all the disability related to her heart condition is the liability of her employer. She argues that the present apportionment is not based upon

proper "legal" theories but rather upon "medical" theories which do not rest upon the legal principles of apportionment. Franklin asserts that if there is apportionment, then the disability apportioned away from the employer's liability should be the liability of the Subsequent Injuries Fund.[1]

Subsequent Injuries Fund agrees in part with Franklin and argues there is no basis for apportionment in this case and hence it has no liability since there was no preexisting disability prior to the industrial disability—a necessary precondition to the imposition of liability upon it. Subsequent Injuries Fund further asserts that there is also no basis for apportionment to the natural progression of the preexisting disease (Lab. Code, § 4663) since, in order to so apportion, the preexisting condition must be actually disabling at the time of the industrial injury. In making the latter assertion, Subsequent Injuries Fund contends our Supreme Court in *Zemke v. Workmen's Comp. App. Bd.* (1968) 68 Cal.2d 794 [69 Cal.Rptr. 88, 441 P.2d 928], has so interpreted Labor Code section 4663.[2]

County and its workers' compensation insurance carrier for the period prior to July 1, 1969, State Compensation Insurance Fund (State Fund), contend that the Board properly apportioned under section 4663 50 percent of Franklin's disability as nonindustrial. County and State Fund argue that in the special case of the cumulative trauma injury apportionment should be made to the various industrial and nonindustrial factors which concurrently contributed to Franklin's disability. State Fund and County also assert apportionment is justified since there is competent medical evidence that 50 percent of Franklin's disability exists irrespective of any industrial contribution. Additionally, State Fund and County contend that apportionment is justified on the grounds that if Franklin had been examined prior to her myocardial infarct restrictions would have been placed upon her regarding her heart disease. State Fund and County acknowledge the latter argument would appear to conflict with the appellate decisions in *Hulbert v. Workmen's Comp. Appeals Bd.* (1975) 47 Cal.App.3d 634, 640 [121 Cal.Rptr. 239]; *Gross v. Workmen's Comp. Appeals Bd.* (1975) 44 Cal.App.3d 397, 404-405 [118 Cal.Rptr. 609]; and *Amico v. Workmen's Comp. Appeals Bd.* (1974) 43 Cal.App.3d

---

[1]Since Subsequent Injuries Fund is permitted to take "credit" against its liability for other monetary payments Franklin receives on account of the preexisting disability or impairment (Lab. Code, § 4753; 2 Hanna, Cal. Law of Employee Injuries and Workmen's Compensation (2d rev. ed. 1977) § 14.05 [4]), an unapportioned award against the County is financially more remunerative to Franklin.

[2]Unless hereinafter specified to the contrary, all references will be to the Labor Code.

592, 606 [117 Cal.Rptr. 831], but they assert these appellate opinions conflict with other workers' compensation principles.

For the reasons stated herein, we hold that substantial evidence does not support the present finding of apportionment. Hence, the present award against Subsequent Injuries Fund cannot stand. We annul the award herein and remand to the Board for further consideration in light of the views expressed in this opinion.

I

### SUMMARY OF MEDICAL EVIDENCE

Before this court the parties agreed that Franklin sustained injury to her heart as the result of the stress and strain of her employment at County. Apportionment is the issue. Our review of the medical evidence is consequently limited to those portions pertinent to apportionment and Subsequent Injuries Fund liability.

Rueben Merliss, M.D., reported on behalf of Franklin. In his report of September 18, 1974, Dr. Merliss attributed Franklin's infarct to her work; he also opined Franklin at that time was totally temporarily disabled. As to the cause of her disability, Dr. Merliss stated:

"I believe that this patient's myocardial infarction is primarily due to arteriosclerosis, due in turn to her hypertension and a genetic disturbance in fat metabolism. However I believe that the infarct itself was both precipitated and aggravated by the patient's work. She gives a convincing description of hard work, which, although she was devoted to it, was quite taxing. The attack itself appeared to occur directly while the patient was working, although she might have had some symptoms of a lesser degree for some days before, also while she was working.

"Consequently I would believe that the patient's work has probably brought the attack on sooner than it would have come as a result of natural causes alone.

"I believe therefore that all of the disability due to this attack is industrial. . . ."

State Fund had Franklin examined by Alvin Markowitz, M.D. As indicated in his report of October 26, 1974, Dr. Markowitz' diagnoses were:

"1. Disease of the heart:

"a) arteriosclerotic

"b) healed myocardial infarction

"c) angina pectoris

"d) Class III B[3]

"2. Previous history of hypercholesterolemia."[4]

Dr. Markowitz felt that Franklin's heart condition was industrially related. However, Dr. Markowitz felt that apportionment was indicated: "Apportionment is appropriate. The patient had a preexisting disability. The high cholesterol was caused and accelerated as a predisposing factor to the development of coronary arteriosclerosis. It is medically probable she would have had heart disease because of this genetic defect of the high cholesterol no matter what her occupation was, and this would be a preexisting disability. Had she been examined with a treadmill test and/or coronary angiogram prior to the infarct, indeed probably several years ago she would have been found to have advanced coronary artery disease, which although asymptomatic, would have been productive of producing a disability against certain work activities and against emotional stress. I therefore feel that 75 percent of this lady's permanent disability was not related to her work, but related to her high cholesterol,

---

[3]Functional Class III is defined as "Patients with cardiac disease resulting in marked limitation of physical activity. They are comfortable at rest. Less than ordinary physical activity causes fatigue, palpitation, dyspnea, or anginal pain." (New York Heart Association, Inc., Diseases of the Heart and Blood Vessels—Nomenclature and Criteria for Diagnosis (6th ed. 1964) p. 114.) Therapeutic Class B is defined as: "Patients with cardiac disease whose ordinary physical activity need not be restricted, but who should be advised against severe or competitive efforts." (*Id.*) "The functional classification is an estimate of what the patient's heart will allow him to do. . . ." (*Id.*) "The therapeutic classification is intended as a guide to the management of the activities of cardiac patients. It gives a prescription for the amount of physical activity which is advised for those in each functional class." (*Id.*) "The functional capacity of the patient does not always determine the amount of physical activity that should be permitted. . . . There is frequently a difference between the amount of activity which a patient can undertake in terms of his functional capacity and that which he should attempt in order to prevent aggravation of his disease. The recommendation of physical activity is based not only upon the amount of effort possible without discomfort but also upon the nature and severity of the cardiac disease." (*Id.*)

[4]Hypercholesterolemia is an excess of cholesterol in the blood. (Dorland's Illustrated Medical Dict. (24th ed. 1965) p. 701.)

a metabolic and genetic predisposition to coronary artery disease. But, I do feel that this patient was under emotional stress as an RN, especially since the sectioning, which has occurred at the county hospital, which has brought on added duties and does account for 25 percent of her permanent disability."

County and Franklin then agreed to utilize Bernard M. Smolens, M.D., as an agreed medical examiner.[5] Dr. Smolens found Franklin's condition permanent and stationary. Dr. Smolens went on to state: "The factors of permanent disability are loss of myocardial contractility, excessive fatigue and the subjective complaints of angina on effort. According to the Guidelines for Work Capacity, . . . she is best described by h. (Disability Resulting in Limitation to Sedentary Work). The next question is that of apportionment, which I also feel . . . , is appropriate. There is no question but that she had some cardiac disability which could have been demonstrated on a treadmill and/or coronary angiogram. There is also the question in my mind that she would have ultimately sustained a myocardial infarction but the rather severe degree of physical and emotional stress under which she worked accelerated the ultimate infarction by impinging on her decreasing cardiac reserve. As a physician who also has spent time at the USC County Medical Center, I too, find entirely credible the patient's description of her work as to physical and emotional stress and overtime. Regarding the apportionment, I would feel that 50% of her permanent disability was industrial and 50% was related to her inborne metabolic disturbance."

Dr. Smolens was then cross-examined by the parties. Dr. Smolens at one point admitted he was apportioning along the lines of Dr. Markowitz, that is, had Franklin been examined by a treadmill or by an angiogram prior to her infarct she would have been placed on restrictions because of her coronary artery disease. Dr. Smolens then testified that based upon reasonable medical probability Franklin would have had 50 percent of her present disability irrespective of any

[5]The County had already obtained a medical evaluation from Gerald S. Trostler, M.D. Dr. Trostler believed that the development of Franklin's coronary artery disease was not industrially related and that Franklin had not sustained an infarct. County does not contend to this court that Franklin did not sustain an infarct. Dr. Trostler's opinion is not relevant to the issues now before this court. "If a disability is established to be the result of an industrial injury, a finding of apportionment between industrial and non-industrial causes cannot be supported by prior medical testimony that the employee's disability was entirely unconnected with his employment." (*Berry* v. *Workmen's Comp. App. Bd.* (1968) 68 Cal.2d 786, 792 [69 Cal.Rptr. 68, 441 P.2d 908].)

Neither State Fund nor apparently Subsequent Injuries Fund stipulated to Dr. Smolens as an agreed medical examiner.

industrial contribution. Dr. Smolens also opined that within a reasonable medical certainty Franklin would anyway have had her infarct within three years from the time she actually had it even if she had not worked for the County. However, Dr. Smolens admitted that prior to the infarct, Franklin's preexisting heart disease was not causing her any incapacity to work and from a subjective point of view she had no total or partial loss of function of her body prior to her infarct.

II

DISCUSSION

The question here is whether substantial evidence supports the decision of the Board on apportionment and the correlative issue of Subsequent Injuries Fund liability. (*LeVesque* v. *Workmen's Comp. App. Bd.* (1970) 1 Cal.3d 627, 637 [83 Cal.Rptr. 208, 463 P.2d 432]; see also, *Lamb* v. *Workmen's Comp. Appeals Bd.* (1974) 11 Cal.3d 274 [113 Cal.Rptr. 162, 520 P.2d 978]; *Garza* v. *Workmen's Comp. App. Bd.* (1970) 3 Cal.3d 312, 317 [90 Cal.Rptr. 355, 475 P.2d 451]; *Redmond* v. *Workmen's Comp. Appeals Bd.* (1973) 36 Cal.App.3d 302, 305 [111 Cal.Rptr. 530].) ■ In resolving the issue of apportionment, the Board must rely on expert medical opinion. An expert's opinion, however, which does not rest upon relevant facts or which assumes an incorrect legal theory cannot constitute substantial evidence upon which the Board may base an apportionment finding. (*Zemke* v. *Workmen's Comp. App. Bd., supra,* 68 Cal.2d 794, 798; *Berry* v. *Workmen's Comp. App. Bd., supra,* 68 Cal.2d 786, 791; *Amico* v. *Workmen's Comp. Appeals Bd., supra,* 43 Cal.App.3d 592, 604-605; *Redmond* v. *Workmen's Comp. Appeals Bd., supra,* 36 Cal.App.3d 302, 308.)

Accordingly, this court must examine whether the facts and the medical evidence establish apportionment in accord with proper legal principles.

A. *Apportionment*

■ "The statutes governing apportionment generally are Labor Code sections 4663 and 4750. Their purpose and limitations are cogently stated in *Gardner* v. *Industrial Acc. Com.,* 28 Cal.App.2d 682, 684 [83 P.2d 295]: '[T]he Industrial Accident Commission [now the Workers' Compensation Appeals Board] is not authorized, in computing the percentage of permanent disability of an employee caused by an industrial injury, to

include any percentage of such disability attributable to a prior industrial or nonindustrial disease or injury; nor is it justified in including in an award any amount as compensation for the disability attributable solely to the prior injury or disease and for which the employment was in no wise responsible.' " (*State Comp. Ins. Fund* v. *Industrial Acc. Com. (Quick)* (1961) 56 Cal.2d 681, 684 [16 Cal.Rptr. 359, 365 P.2d 415].) (Fns. omitted.)

1. *Lack of Substantial Evidence to Support Apportionment Pursuant to Section 4750.*

Section 4750 provides: "An employee who is suffering from a previous permanent disability or physical impairment and sustains permanent injury thereafter shall not receive from the employer compensation for the later injury in excess of the compensation allowed for such injury when considered by itself and not in conjunction with or in relation to the previous disability or impairment. The employer shall not be liable for compensation to such an employee for the combined disability, but only for that portion due to the later injury as though no prior disability or impairment had existed."

■ "This section has been interpreted to mean that, 'An employer [or his insurer] of a workman who has a permanent physical impairment and who thereafter sustains a compensable injury resulting in permanent disability, is not liable for compensation for the ensuing combined disabilities, but only for that portion of permanent disability which is caused by the last injury.' (*Smith* v. *Industrial Acc. Com.*, 44 Cal.2d 364, 365 [282 P.2d 64]. See also *Edson* v. *Industrial Acc. Com.*, 206 Cal. 134, 138-139 [273 P. 572].) The purpose of this statutory provision is to encourage the employment of physically disabled persons by assuring an employer that he will not be liable for the total combined disability present after an industrial injury, but only for that portion which is attributable to the subsequent industrial injury. (See 2 Larson, Workmen's Compensation Law (1961) pp. 54-61; Comment (1956) 44 Cal.L. Rev. 548.)" (*State Compensation Ins. Fund* v. *Industrial Acc. Com. (Hutchinson)* (1963) 59 Cal.2d 45, 48-49 [27 Cal.Rptr. 702, 377 P.2d 902]; see also *Mercier* v. *Workers' Comp. Appeals Bd.* (1976) 16 Cal.3d 711, 715 [129 Cal.Rptr. 161, 548 P.2d 361]; *Subsequent Injuries Fund* v. *Workmen's Comp. App. Bd. (Talcott)* (1970) 2 Cal.3d 56, 59 [84 Cal.Rptr. 140, 465 P.2d 28]; *Dow Chemical Co.* v. *Workmen's Comp. App. Bd.* (1967) 67 Cal.2d 483, 493-494 [62 Cal.Rptr. 757, 432 P.2d 365]; *Reynolds Elec. etc. Co.* v. *Workmen's Comp. App. Bd. (Buckner)* (1966) 65 Cal.2d 438, 442

[55 Cal.Rptr. 254, 421 P.2d 102]; *Ferguson* v. *Industrial Acc. Com.* (1958) 50 Cal.2d 469, 475 [326 P.2d 145]; *Subsequent Etc. Fund* v. *Ind. Acc. Com. (Patterson)* (1952) 39 Cal.2d 83, 85-86 [244 P.2d 889].)

Section 4750 must, nevertheless, be construed in light of the rule that the employer is liable to the extent the industrial injury accelerates, aggravates or "lights up" the preexisting disability or impairment. (*Reynolds Elec. etc. Co.* v. *Workmen's Comp. App. Bd., supra,* 65 Cal.2d 438, 442-443; *Bstandig* v. *Workers' Comp. Appeals Bd.* (1977) 68 Cal.App.3d 988, 997 [137 Cal.Rptr. 713]; *Brown* v. *Workmen's Comp. Appeals Bd.* (1971) 20 Cal.App.3d 903, 913-914 [98 Cal.Rptr. 96].)

■ A permanent disability is one which causes impairment of earning capacity, impairment of the normal use of a member, or a competitive handicap in the open labor market. (*State Compensation Ins. Fund* v. *Industrial Acc. Com. (Hutchinson), supra,* 59 Cal.2d 45, 52; *Subsequent Injuries Fund* v. *Industrial Acc. Com. (Allen)* (1961) 56 Cal.2d 842, 845-846 [17 Cal.Rptr. 144, 366 P.2d 496]; *Moyer* v. *Workmen's Comp. Appeals Bd.* (1972) 24 Cal.App.3d 650, 657 [100 Cal.Rptr. 540].) **(5)** The previous condition, as to which apportionment is sought, must be actually "labor disabling." (*Subsequent Injuries Fund* v. *Industrial Acc. Com. (Allen), supra,* 56 Cal.2d 842, 845-846; *Ferguson* v. *Industrial Acc. Com., supra,* 50 Cal.2d 469, 477; *Bookout* v. *Workmen's Comp. Appeals Bd.* (1976) 62 Cal.App.3d 214, 229 [132 Cal.Rptr. 864].) "While the permanent partial disability need not have existed prior to work exposure (*Dow Chemical Co.* v. *Workmen's Comp. App. Bd., supra,* [67 Cal.2d 483,] fn. 9 at p. 495) nor need it be of industrial origin, known to the claimant at the time of the subsequent injury, or the subject of a prior rating (*Subsequent Injuries Fund* v. *Workmen's Comp. App. Bd.* (1970) 2 Cal.3d 56, 62 [84 Cal.Rptr. 140, 465 P.2d 28]), or known to the employer (*Ferguson* v. *Industrial Acc. Com., supra,* 50 Cal.2d 469, 470), nevertheless it must antedate the subsequent injury (*Subsequent Injuries Fund* v. *Industrial Acc. Com.* (1964) 226 Cal.App.2d 136, 145 [37 Cal.Rptr. 844]) and it must be permanent in character (*Dow Chemical Co.* v. *Workmen's Comp. App. Bd., supra,* 67 Cal.2d 483, 492; *Subsequent Injuries Fund* v. *Industrial Acc. Com., supra,* 226 Cal.App.2d 136, 143-144). Although the prior disability need not be reflected in the form of loss of earnings, if it is not, it must be of a kind upon which an award for partial permanent disability could be made had it been industry caused. This is necessary to distinguish [it] from a 'lighting up' aggravation, or acceleration of a preexisting physical condition where the employer is to be held liable for the whole. (*Ferguson* v. *Industrial Acc.*

*Com., supra,* 50 Cal.2d 469, 477-478; *Subsequent Injuries Fund* v. *Industrial Acc. Com., supra,* 56 Cal.2d 842, 845.)" (*Brown* v. *Workmen's Comp. Appeals Bd., supra,* 20 Cal.App.3d 903, 914-915; see also *Bookout* v. *Workmen's Comp. Appeals Bd., supra,* 62 Cal.App.3d 214, 229.) Further, the preexisting disability need not have interfered with the employee's ability to work at his employment in the particular field in which he was working at the time of the subsequent industrial injury. (*Subsequent Injuries Fund* v. *Industrial Acc. Com. (Allen), supra,* 56 Cal.2d 842, 845-846; *Ferguson* v. *Industrial Acc. Com., supra,* 50 Cal.2d 469, 477; *Moyer* v. *Workmen's Comp. Appeals Bd., supra,* 24 Cal.App.3d 650, 658.) The ability of the injured to carry on some type of gainful employment under work conditions congenial to the preexisting disability does not require a finding that the preexisting disability does not exist. (*Subsequent Injuries Fund* v. *Ind. Acc. Com. (Baldes)* (1960) 53 Cal.2d 392, 402 [1 Cal.Rptr. 833, 348 P.2d 193].)

■ A preexisting disability cannot be established by a "retroactive prophylactic work restriction" on the preexisting condition placed on the injured after the subsequent industrial injury in absence of evidence to show that the worker was actually restricted in his work activity prior to the industrial injury. (*Hulbert* v. *Workmen's Comp. Appeals Bd., supra,* 47 Cal.App.3d 634, 640; *Gross* v. *Workmen's Comp. Appeals Bd., supra,* 44 Cal.App.3d 397, 404-405; *Amico* v. *Workmen's Comp. Appeals Bd., supra,* 43 Cal.App.3d 592, 606; see also *Bookout* v. *Workmen's Comp. Appeals Bd., supra,* 62 Cal.App.3d 214, 224-225.) Where the injured was actually under a prophylactic restriction for a preexisting condition at the time of the industrial injury, apportionment to a preexisting disability is proper. It is only the *retroactive* application of a prophylactic restriction to an otherwise nonexistent previous disability that is prohibited. (*Ibid.*)

The prohibition against "retroactive prophylactic work restrictions" to establish a preexisting disability is not inconsistent with the fact that prophylactic restrictions are ratable factors of permanent disability stemming from the industrial injury. (*Gross, supra,* 44 Cal.App.3d at p. 404.) Applying a prophylactic work restriction retroactively creates "a sort of factual or legal fiction of an otherwise nonexistent previous disability or physical impairment." (*Ibid.*) Apportionment involves a factual inquiry. (See *Mercier* v. *Workers' Comp. Appeals Bd., supra,* 16 Cal.3d 711, 716; see also, *State Comp. Ins. Fund* v. *Workers' Comp. Appeals Bd. (Gaba)* (1977) 72 Cal.App.3d 13, 16-17 [139 Cal.Rptr. 802].)

A line of cases has indicated that what constitutes a preexisting disability should be defined more narrowly. In *Gross* v. *Workmen's Comp. Appeals Bd., supra,* 44 Cal.App.3d 397, 401, the court stated:

"We observe that the elements of the term *'disability'* as used in the Workmen's Compensation Act are '(1) *actual incapacity to perform the tasks usually encountered in one's employment* and the wage loss resulting therefrom, and (2) physical impairment of the body . . . .' (Italics added; *Allied Compensation Ins. Co.* v. *Industrial Acc. Com.,* 211 Cal.App.2d 821, 831 [27 Cal.Rptr. 918]; and see *State of Cal.* v. *Industrial Acc. Com.,* 135 Cal.App.2d 544, 550 [288 P.2d 31].) Here petitioner suffered from no 'actual incapacity to perform the tasks usually encountered in [her] employment,' prior to the industrial injuries sustained by her.

"We next note the statute's alternative requirement for its operation, i.e., suffering from a 'previous . . . physical impairment.' ' "Impairment" ' as used in the pertinent Labor Code sections ' "is not an unknown condition but one that causes loss of function of the body in whole or in part." ' (*State of California* v. *Ind. Acc. Com.,* 147 Cal.App.2d 818, 823 [306 P.2d 64] [disapproved on unrelated point in *Subsequent Injuries Fund* v. *Industrial Acc. Com.,* 56 Cal.2d 842, 846 [17 Cal.Rptr. 144, 366 P.2d 496], and *Ferguson* v. *Industrial Acc. Com.,* 50 Cal.2d 469, 479 [326 P.2d 145]].) Here again petitioner, before her injuries, suffered from no total or partial 'loss of function of the body.'

"Faced with a problem somewhat akin to ours, the court in *State of Cal.* v. *Industrial Acc. Com., supra,* 135 Cal.App.2d 544, 551, stated: 'We can find neither in the original [workmen's compensation] act, nor in its present form, any indication that the Legislature intended that either the term "disability" or "impairment" as used therein was not to be limited to *actual manifest and symptomatic disabilities* which antedated an industrial injury.' (Italics added.)"

This analysis was later reiterated by the same court in *Hulbert* v. *Workmen's Comp. Appeals Bd., supra,* 47 Cal.App.3d 634, 640, footnote 1.

It is not possible to reconcile *Hulbert* and *Gross* with the other numerous cases cited herein on the grounds that *Hulbert* and *Gross* deal with apportionment pursuant to the already quoted section 4750 while the other cases, for the most part, deal with Subsequent Injuries Fund liability. The approach to apportionment pursuant to section 4750 should be consistent with Subsequent Injuries Fund liability since the liability of

the Subsequent Injuries Fund is correlated to the liability of the employer. (*State Compensation Ins. Fund* v. *Industrial Acc. Com. (Hutchinson)*, *supra*, 59 Cal.2d 45, 55; *Moyer* v. *Workmen's Comp. Appeals Bd.*, *supra*, 24 Cal.App.3d 650, 656; see also *Subsequent Etc. Fund* v. *Ind. Acc. Com.*, *(Patterson)*, *supra*, 39 Cal.2d 83, 85; *Bookout* v. *Workmen's Comp. Appeals Bd.*, *supra*, 62 Cal.App.3d 214; *Brown* v. *Workmen's Comp. Appeals Bd.*, *supra*, 20 Cal.App.3d 903.) Therefore, any contention that the rules for determining a preexisting disability for the purposes of apportionment pursuant to section 4750 and for the purposes of Subsequent Injuries Fund liability differ must be emphatically rejected.

*Hulbert* and *Gross* suggest a narrower definition of preexisting disability in that the "preexisting disability" must cause "actual incapacity to perform tasks usually encountered in one's employment" and that the preexisting conditions must be known to the employee and be an actual manifest and symptomatic disability. This implies that even if in other occupations the employee would have been disabled, there can be no apportionment to the preexisting condition if such condition did not cause disability in the employee's occupation at the time of the subsequent industrial injury and was unknown to the employee.

Our Supreme Court had already rejected this definition in *Subsequent Injuries Fund* v. *Workmen's Comp. App. Bd. (Talcott)*, *supra*, 2 Cal.3d 56, 62. The high court there stated: "The applicant may obtain benefits from the [Subsequent Injuries Fund] on the ground that the combination of his prior disability and the disability resulting from the subsequent injury is greater than that which would have resulted from the subsequent injury alone even though he was unaware of the existence of a prior disability before he brings the compensation proceeding to collect benefits for the subsequent injury."

Similarly, earlier in *Subsequent Injuries Fund* v. *Industrial Acc. Com. (Allen)*, *supra*, 56 Cal.2d 842, 846, the high court held that a prior hearing loss, the actual existence of which was first shown by the tests of examining doctors, rendered the applicant, Allen, permanently partially disabled for the purpose of an award against the Subsequent Injuries Fund even though at the time of the subsequent injury the applicant was not aware that he was suffering from a hearing disability.

The court at pages 845-846, stated: "It is clear that under these tests Allen's preexisting permanent partial loss of hearing was sufficient, in the

circumstances, to support the finding that he was permanently partially disabled, that such disability was labor disabling even though it had not resulted in loss of earnings and had not interfered with his employment *in the particular field* in which he was then working, and that it was of a kind which could ground an award of permanent partial disability. As pointed out by the commission, a condition of substantial deafness can reasonably be expected to handicap an employe's [*sic*] ability in the general labor market to get and hold a new job, if once he should be displaced from the job he has had." (Italics in original.)

■ Consequently, neither the fact that the preexisting disability did not interfere with the occupation the injured was engaged in at the time of the subsequent injury nor the fact that it was unknown to him is determinative. The question is whether it can be demonstrated by competent evidence that the preexisting condition did interfere or would have actually interfered with any type of work activity.

Accordingly, we reject the narrow view of *Hulbert* and *Gross* to the extent it is inconsistent with the better and higher authority to the contrary.

■ Reviewing the medical evidence in light of the foregoing principles it is clear that the apportionment to preexisting disability is not supported by substantial evidence. Dr. Markowitz' and Dr. Smolens' statements that had they seen Franklin before the infarct they would have placed work restrictions on her is an attempt to apportion improperly via a retroactive prophylactic restriction. Neither is there any evidence that prior to the infarct the nonindustrial aspects of Franklin's heart condition had caused any medically demonstrable impairment of any bodily function. In fact, Dr. Smolens' testimony is to that she had no such impairment.

The attempts by Dr. Smolens and Dr. Markowitz to apportion to preexisting disability suffers from a far more fundamental defect. Any possible disability existing prior to the infarct would at least in part be the result of the industrial exposure. Therefore, the preexisting disability found prior to the infarct would, in part, be merely a component part of the industrial injury itself. (*Brown* v. *Workmen's Comp. Appeals Bd.,* *supra,* 20 Cal.App.3d 903, 915.)

Accordingly, the finding of preexisting disability and apportionment pursuant to section 4750 must be annulled.

## 2. *Apportionment and Section 4663—Aggravation of Prior Disease*

■ "Section 4663 of the Labor Code provides: 'In case of aggravation of any disease existing prior to a compensable injury, compensation shall be allowed only for the proportion of the disability due to the aggravation of such prior disease which is reasonably attributed to the injury.'

"It is settled that the section must be read in the light of the rule that an employer takes the employee as he finds him at the time of the employment. Accordingly, when a subsequent injury lights up or aggravates a previously existing condition resulting in *disability*, liability for the full disability without proration is imposed upon the employer, and the appeals board may apportion *the disability* under the section 'only in those cases in which part of *the disability* would have resulted, in the absence of the industrial injury, from the "normal progress" ' of the preexisting disease. (E.g., *Smith* v. *Workmen's Comp. App. Bd.,* 71 Cal.2d 588, 592 [78 Cal.Rptr. 718, 455 P.2d 822]; *Granado* v. *Workmen's Comp. App. Bd.,* 69 Cal.2d 399, 401 [71 Cal.Rptr. 678, 445 P.2d 294]; *Zemke* v. *Workmen's Comp. App. Bd.,* 68 Cal.2d 794, 796 [69 Cal.Rptr. 88, 441 P.2d 928]; *Berry* v. *Workmen's Comp. App. Bd.,* 68 Cal.2d 786, 789 et seq. [69 Cal.Rptr. 68, 441 P.2d 908]; *Reynolds Elec. etc. Co.* v. *Workmen's Comp. App. Bd.,* 65 Cal.2d 438, 442-443 [55 Cal.Rptr. 254, 421 P.2d 102]; *Colonial Ins. Co.* v. *Industrial Acc. Com.,* 29 Cal.2d 79, 83-86 [172 P.2d 884]; *Tanenbaum* v. *Industrial Acc. Com.,* 4 Cal.2d 615, 617-618 [52 P.2d 215].)" (Italics added.) (*Ballard* v. *Workmen's Comp. App. Bd.* (1971) 3 Cal.3d 832, 837 [92 Cal.Rptr. 1, 478 P.2d 937].)

■ "A disability resulting from an industrial injury is fully compensable even though a preexisting disease increases the disability caused by the injury or interferes with healing and recovery. (2 Hanna, California Law of Employee Injuries and Workmen's Compensation, *op. cit., supra,* § 14.03[1], at p. 14-18.) 'The underlying theory is that the employer takes the employee subject to his condition when he enters the employment, and that therefore compensation is not to be denied merely because the workman's physical condition was such as to cause him to suffer a disability from an injury which ordinarily, given a stronger and healthier constitution, would have caused little or no inconvenience.' (*Tanenbaum* v. *Industrial Acc. Com., supra,* 4 Cal.2d [615] at p. 617 [52 P.2d 215]; *Colonial Ins. Co.* v. *Industrial Acc. Com., supra,* 29 Cal.2d [79] at p. 84 [172 P.2d 884]; *Associated Indem. Corp.* v. *Industrial Acc. Com.* (1953)

120 Cal.App.2d 423, 425-426 [261 P.2d 25].)" (*Zemke* v. *Workmen's Comp. App. Bd., supra,* 68 Cal.2d 794, 799-800; see also *Berry* v. *Workmen's Comp. App. Bd., supra,* 68 Cal.2d 786, 792-793.)

 The primary inquiry under section 4663—the aggravation of a prior disease—is what disability in fact resulted from the industrial injury. Correspondingly, to allow apportionment, the issue is what part of the total *present disability* is actually related to the natural progression of the heart disease that would be present absent industrial exposure. Accordingly, Franklin is entitled to all disability reasonably related to the industrial injury but that portion of her present disability that is actually attributable to the natural progression of the preexisting nonindustrial condition is not the liability of her employer. Thus, the mere fact that Franklin would have been disabled to a certain extent absent the industrial injury is irrelevant to the extent the present disability is, in fact, due to the industrial injury.[6] "[T]he identified 'cause' [of the disability] cannot be made to yield to purely hypothetical ones." (*Bstandig* v. *Workers' Comp. Appeals Bd., supra,* 68 Cal.App.3d 988, 998 [137 Cal.Rptr. 713].) This appears to be the intent of the language of section 4663 that the employer is liable "for the proportion of the disability *due to the aggravation* of such prior disease which *is* reasonably *attributed* to the [industrial] injury." (Italics added.)

---

[6]Thus, Dr. Smolens' statement that Franklin would have had an infarct of the same severity in three years even absent industrial exposure is irrelevant.

In *Gross, supra,* 44 Cal.App.3d 397, 403-404, the court stated:

"From the evidence before the board it would seem probable, had petitioner's successive industrial accidents not occurred, that at some future time her unknown, dormant, nondisabling and asymptomatic lower back pathology would begin to exhibit objective symptomology in some degree. But there is no evidentiary suggestion that, absent her industrial injuries, petitioner's dormant condition would nevertheless by June 3, 1971 (the day of her second accident), or even at the time of the board hearing, have developed into a 16 percent permanent disability, or any disability.

"*The Workmen's Compensation Act nowhere permits apportionment, against an existing permanent disability resulting from or at least 'lighted up' by an industrial accident, of a disease-caused disability of unknown amount which, but for the accident, would otherwise have occurred at some indefinite future time.* [Italics added.]

"Under the rules we have stated, on the entire record no substantial evidence is found that at or before the time of the board's hearing, petitioner's lower back pathology independently of her industrial injuries had caused a 16 percent or any permanent disability.

"Instead, the record conclusively establishes that petitioner's accidents lighted up or aggravated 'a previously existing condition resulting in disability.' In such circumstances, as stated by *Ballard* v. *Workmen's Comp. App. Bd., supra,* 3 Cal.3d 832, 837, 'liability for the full disability *without proration* is imposed upon the employer, . . .' (Italics added.)"

The question is not merely what the disability would have been absent the industrial injury, but also what is the causation of *the present* disability.

The early Supreme Court case of *Tanenbaum v. Industrial Acc. Com.* (1935) 4 Cal.2d 615 [52 P.2d 215], demonstrates the correct approach. In *Tanenbaum* when the injured suffered an industrial injury she had a preexisting dormant, nondisabling, nonindustrial condition which was aggravated by the industrial injury. The injured claimed in light of the nature of the preexisting condition no apportionment was permitted. The court in *Tanenbaum* rejected the injured's contention, stating: "As we read the record in this proceeding, the petitioner is now suffering from a disability made up in part of an industrial disability growing out of the injury, including the aggravation or 'lighting up' of the preexisting dormant arthritic condition, and, in part, though in a lesser degree, of what may be termed a nonindustrial disability resulting from the normal progress of the preexisting arthritis. Obviously, the latter disability is not attributable to industry and should not be saddled thereon. It is this latter or nonindustrial disability, resulting from the natural and normal progress of the preexisting condition, that underlies the finding that petitioner's permanent disability is 'partly caused by preexisting dormant disease and partly by said injury' and requires the apportionment here made. Such apportionment finds ample support in at least one of the medical reports filed with the commission wherein it is declared, in part, that 'all direct effects of the injury should have passed away in a month or two, and if effects of the injury persist after a year and a half, it could partly be from an acceleration of her preexisting disease caused by the injury. I would feel that it would be fair to consider that *half of her disability at the present time is due to the acceleration of her arthritis from the injury and the balance is due to the natural progress of a preexisting arthritis in a person of her age.'* " (Italics in original.) [4 Cal.2d 615, at p. 618.]

Thus, in *Tanenbaum* there was apportionment since part of the *existing disability* was not due to the industrial injury or the aggravation, acceleration, or "lighting up" of the preexisting condition but due to the natural progression of the preexisting condition.

In *Bowler v. Industrial Acc. Com.* (1955) 135 Cal.App.2d 534, 539 [287 P.2d 562], the court correctly explains apportionment pursuant to section 4663: "If the resultant disability is due entirely to the lighting up or aggravation of the preexisting condition by the industrial injury, the employer is required to compensate for the entire disability and there can be no prorating the extent of the disability due to the accident itself on the one hand and that due to the aggravation caused by the employee's physical condition. (*Tanenbaum v. Industrial Acc. Com.,*

*supra,* 4 Cal.2d at pp. 617, 618.) However, if the *resultant disability* is partly due to an industrial disability growing out of the injury, including the aggravation or 'lighting up' of the preexisting dormant condition, and in part, of what may be termed a nonindustrial disability resulting from the normal progress of the preexisting disease or condition, then the commission must apportion the percentage of the disability due to the injury and the percentage due to the continuance of the disease apart from the injury. (*Tanenbaum* v. *Industrial Acc. Com., supra,* 4 Cal.2d at p. 618; see also *Industrial Indem. Co.* v. *Industrial Acc. Com.,* 95 Cal.App.2d 443, 449 [213 P.2d 11].)" (Italics added.)

Nothing in *Zemke* v. *Workmen's Comp. App. Bd., supra,* 68 Cal.2d 794 in any way alters *Tanenbaum* and requires the preexisting condition to be symptomatic and disabling at the time of the industrial injury to apportion pursuant to section 4663. While in *Zemke* the preexisting condition was asymptomatic and nondisabling, the court did not refuse to apportion under section 4663 merely because of these factors. Rather the court in *Zemke* annulled the apportionment under section 4663 since the medical reports nowhere indicated that the injured's disability was partially "due to the natural progress" of the preexisting disease. (*Zemke, supra,* 68 Cal.2d at pp. 800-801.)[7]

To require for apportionment under section 4663 that the preexisting condition be symptomatic and disabling is not only erroneous under our

---

[7]As clearly stated in *Zemke, supra,* 68 Cal.2d 794, 800-801: "In *Tanenbaum* the applicant, who was injured in the course of her employment as a grocery clerk, also suffered from a *preexisting asymptomatic arthritic condition.* The Industrial Accident Commission attributed 33⅓ percent of her disability to her preexisting condition. In holding that substantial evidence supported the apportionment finding, we emphasized that the evidence established 'what may be termed a nonindustrial disability resulting from the normal progress of the preexisting arthritis.' (4 Cal.2d at p. 618.) In particular, we pointed to the following language in one of the medical reports filed with the commission in which an apportionment recommendation was made: '. . . and the balance [of her disability] is due to the natural progress of a preexisting arthritis in a person of her age.' (*Ibid.*) [¶] *The medical reports in the instant case, on the other hand, nowhere indicate that petitioner's disability was partially 'due to the natural progress' of his preexisting arthritic condition. . . .* [¶] Since . . . Dr. Schoneberg's opinion stems from an incorrect legal theory, and Dr. Nippell's recommendation of 50 percent apportionment constitutes a bare legal conclusion, we must hold that the board's finding of 50 percent apportionment is not supported by substantial evidence." (Italics added.)

Part of any possible misinterpretation of *Tanenbaum* and *Zemke* appears to stem from *Gross* where the court mischaracterized *Tanenbaum* as a case where the injured "*at the time of his industrial accident* . . . was suffering from 'what may be termed a nonindustrial *disability* resulting from the normal progress of the preexisting arthritis.' " (Italics by court.) (*Gross, supra,* 44 Cal.App.3d at p. 404.) This interpretation in *Gross* of the factual situation in *Tanenbaum* is clearly erroneous.

Supreme Court's opinions in *Tanenbaum* and *Zemke,* but also ignores the difference in the language of section 4750 and section 4663. To apportion under section 4750 there must be a preexisting disability but not under section 4663. Any other interpretation makes the sections duplications in contravention of accepted principles of statutory construction. (See *Moyer* v. *Workmen's Comp. Appeals Bd.* (1973) 10 Cal.3d 222, 230-231 [110 Cal.Rptr. 144, 514 P.2d 1224]; *Tidewater Oil Co.* v. *Workers' Comp. Appeals Bd.* (1977) 67 Cal.App.3d 950, 956 [137 Cal.Rptr. 36].)

We also reject the contention by State Fund and County that special rules of apportionment should apply in continuous trauma cases to allow for apportionment to concurrent nonindustrial factors that contributed to the disability even where such nonindustrial factors alone would not have resulted in disability.

The rule that under section 4663 apportionment may be made only in those cases in which part of the disability is the result of the natural progression of the preexisting disease has been applied in cumulative trauma cases. (*Bstandig* v. *Workers' Comp. Appeals Bd., supra,* 68 Cal.App.3d 988, 997-998; *Skinner* v. *Workmen's Comp. App. Bd.* (1969) 269 Cal.App.2d 905 [75 Cal.Rptr. 314].)[8]

*Bstandig* involved a cumulative trauma psychiatric injury as the result of stressful employment. Citing *Zemke* and *Tanenbaum,* the court there noted that under section 4663 the "permissible pattern of apportionment" involved "ascribing a part of the [injured's] disability to the 'normal progress' of her [preexisting] psychological propensities." (*Bstandig, supra,* 68 Cal.App.3d at p. 997.) Explaining it is the "disability" that is apportioned rather than the medical factors which resulted in the disability (*ibid.*), the court stated: "[A]pportionment in terms of sources

---

[8]At oral argument State Fund cited *Baker* v. *Industrial Acc. Com.* (1966) 243 Cal.App.2d 380 [52 Cal.Rptr. 276] as contrary authority. We find *Baker* unpersuasive for two reasons. First, in *Baker* the court applied the erroneous "any substantial evidence" test in reviewing the apportionment. As held in *LeVesque* v. *Workmen's Comp. App. Bd., supra,* 1 Cal.3d 627, the correct standard for judicial review is substantial evidence in light of the entire record. In *LeVesque* the court expressly disapproved the "any substantial evidence" test of *Baker.* (*LeVesque, supra,* 1 Cal.3d at pp. 636-637.)

Secondly, *Baker* was before *Zemke* and *Berry* delineated the exact nature of medical evidence required to support apportionment. As one writer has noted, prior to *Zemke* and *Berry* appellate decisions were seemingly in conflict as to what evidence supported apportionment. (Hanna, *Apportionment of Permanent Disability: A Review of Recent California Court Opinions* (1970) 21 Hastings L.J. 623, 626-627.)

of stress is permissible only insofar as a discreet [sic] and discernible portion of the disability can be imputed to each source." (*Id.,* at p. 998.)

Applying the foregoing discussion to Franklin's injury, it must be noted that there are two "components" to Franklin's present heart disability. The first is the heart damage and continuing symptomatology related to the infarct; the second component is the disability related to the underlying heart (cardiovascular) disease (hereinafter heart disease).

■ All the disability related solely to the infarct component is compensable and the liability of the employer. This is because industrial factors aggravated the heart disease and accelerated the occurrence of the infarct, which absent the industrial exposure would not have occurred when it did.[9]

The underlying heart disease may be the result of nonindustrial causes and industrial causes. Disability related to Franklin's underlying heart disease is compensable to the extent work stress caused the heart disease. If absent industrial exposure, Franklin would not have had any heart disease which would result in medically recognizable restrictions, then there is no apportionment. That is, if Franklin merely had a preexisting propensity to heart disease which alone would not have resulted in medically determined disability absent industrial factors, then no apportionment is indicated.

Apportionment of the disability from the heart disease is indicated where the nonindustrial aspects of the heart disease form part of the basis of the present disability. Thus, after removing that portion of the heart disease related to the stresses of employment one looks to see if the remaining nonindustrially caused heart disease would be disabling. Apportionment is then allowed to the extent that this disability makes Franklin's total disability greater than the industrial infarct disability plus the industrial heart disease disability. This does not involve improper apportionment based upon a retroactive prophylactic restriction. The doctor would not be saying had he seen the injured before the industrial injury he would have restricted her; rather the doctor is merely defining the basis of the injured's *present* disability.

---

[9]This is not a case where industrial factors aggravate an infarct itself when such infarct is, in fact, occurring independently of industrial factors.

Thus, for apportionment under section 4663, unlike under section 4750, it is irrelevant that the injured's preexisting condition was nondisabling prior to or at the time of the industrial injury. The pertinent question is whether part of the injured's present disability actually is related to the natural progression of such preexisting condition rather than the result of the industrial injury aggravating, accelerating or "lighting up" such condition.

For purposes of further clarification, the following procedure should be followed in apportioning Franklin's disability pursuant to section 4663—aggravation of prior disease:

(a) All the factors of disability resulting from the heart condition must be determined in order to ascertain the entire permanent disability. (See *Hegglin* v. *Workmen's Comp. App. Bd.* (1971) 4 Cal.3d 162, 171-172 [93 Cal.Rptr. 15, 480 P.2d 967].)

(b) Determination of apportionment pursuant to section 4663.

*Step One:*

What disability is due to the infarct and its effect on the underlying heart disease? All of this disability is compensable. Here, since Dr. Smolens says the infarct would have occurred in three years absent the industrial exposure, it appears the industrial exposure accelerated the occurrence of the infarct. All the disability related to the infarct is compensable since the industrial exposure is *in fact* the cause of this aspect of the disability. If all of Franklin's present disability rating can be accounted by the disability from the infarct, then there is no apportionment of the award and the inquiry regarding apportionment pursuant to section 4663 is ended.

*Step Two:*

What disability does Franklin have due to the underlying heart disease irrespective of the infarct?

*Step Three:*

Subtracting the industrial aggravation of the underlying heart disease, would the residual heart disease give rise to any disability? If the answer is "no," there is no apportionment.

*Step Four:*

If the answer in step three is "yes," then what would be the residual heart disease disability after subtracting the industrial aggravation? This disability is not the liability of the employer and should not be included in calculating the permanent disability award.

*Step Five:*

The factors of infarct disability must then be "combined" with the factors of the industrial portion of the heart disease to achieve a single disability rating. Simply adding the two together would obviously result in the "pyramiding" or "duplication" of the various factors of disability.[10] The "multiple disabilities table," which is contained at page 82 of the Schedule for Rating Permanent Disabilities (for an explanation see *Mihesuah v. Workers' Comp. Appeals Bd.* (1976) 55 Cal.App.3d 720, 726-727 [127 Cal.Rptr. 688]; 1 Hanna, *supra,* § 11.03 [8]; Welch, Fundamentals for Applying Cal. Schedule for Rating Permanent Disabilities (1975) pp. 43-44), does not appear to apply. The "multiple disabilities table" applies only to "disabilities involving *different members or organs* of the body (for instance disability in an arm, the back, and a leg.)" (Schedule for Rating Permanent Disabilities, *supra,* p. 81; see also Welch, *supra,* p. 43; *Mihesuah, supra,* 55 Cal.App.3d 720.) The table does not apply to "multiple disability factors in a single extremity nor to

---

[10]The Board and the courts have on occasion used the term "overlap" in the context of the problem of "pyramiding." (See *Hegglin* v. *Workmen's Comp. App. Bd., supra,* 4 Cal.3d 162, 172-174; *Mihesuah* v. *Workers' Comp. Appeals Bd.* (1976) 55 Cal.App.3d 720 [127 Cal.Rptr. 688].) As one commentator has pointed out, using "overlap" as being synonymous with "pyramiding" has led to confusion. (See Mastoris, Survey of the Developments in the Law of Workers' Compensation in 1977 (printed materials prepared in conjunction with the educational seminar of Current Problem in Workers' Compensation presented by the Compensation Insurance Attorneys Association on December 3, 1977, in Los Angeles (Century City), California) p. 48.) For purposes of clarity, the term "overlap" should only be used in the apportionment of successive injuries (the situation presented in *State Compensation Ins. Fund* v. *Industrial Acc. Com. (Hutchinson), supra,* 59 Cal.2d 45; *Mercier* v. *Workers' Comp. Appeals Bd., supra,* 16 Cal.3d 711; *State Comp. Ins. Fund* v. *Workers' Comp. Appeals Bd. (Gaba)* (1977) 72 Cal.App.3d 13 [139 Cal.Rptr. 802]), and the term "pyramiding" or "duplication" should be used to describe the situation of multiple disabilities flowing from a single industrial injury (the situation presented by *Hegglin, Mihesuah, State Compensation Ins. Fund* v. *Workers' Comp. Appeals Bd. (Hurley)* (1977) 70 Cal.App.3d 599 [139 Cal.Rptr. 41], and here). (*Mastoris, supra.*)

bilateral disabilities (such as disability in both legs)" for which other procedures are followed to prevent "duplication" or "pyramiding" of the factors of the disability. (Schedule for Rating Permanent Disabilities, *supra,* p. 81; Welch, *supra,* pp. 13-14, 21-22, 28-29, 31.) In absence of any appropriate "guide" from the Schedule for Rating Permanent Disabilities, the proper procedure in this case would be for the Board to obtain medical opinion as to Franklin's overall disability which opinion should consider both the industrial disability from the infarct and the industrial component of the underlying heart disease disability.[11]

Based upon the present record, the apportionment arrived at by the Board cannot be supported pursuant to the authority of section 4663.

B. *Subsequent Injury Fund Benefits*[12]

If there can be no apportionment to preexisting disability under section 4750, there can be no Subsequent Injuries Fund liability. (*State Compensation Ins. Fund* v. *Industrial Acc. Com. (Hutchinson), supra,* 59 Cal.2d 45, 55; *Moyer* v. *Workmen's Comp. Appeals Bd., supra,* 24 Cal.App.3d 650, 656; *Brown* v. *Workmen's Comp. Appeals Bd., supra,* 20 Cal.App.3d 903.) Consequently, since we have found substantial evidence does not support the finding of preexisting disability under section 4750, the present award against Subsequent Injuries Fund must be annulled.

---

[11]In the special case here involving apportionment we note it is also conceivable that the industrial part of these two disability components, in light of all circumstances, might well be greater than when just added together. However, such a result would need the support of expert medical opinion.

[12]Section 4751 provides: "If an employee who is permanently partially disabled receives a subsequent compensable injury resulting in additional permanent partial disability so that the degree of disability caused by the combination of both disabilities is greater than that which would have resulted from the subsequent injury alone, and the combined effect of the last injury and the previous disability or impairment is a permanent disability equal to 70 percent or more of total, he shall be paid in addition to the compensation due under this code for the permanent partial disability caused by the last injury compensation for the remainder of the combined permanent disability existing after the last injury as provided in this article, provided, that either (a) the previous disability or impairment affected a hand, an arm, a foot, a leg, or an eye, and the permanent disability resulting from the subsequent injury affects the opposite and corresponding member, and such latter permanent disability, when considered alone and without regard to, or adjustment for, the occupation or age of the employee, is equal to 5 percent or more of total, or (b) the permanent disability resulting from the subsequent injury, when considered alone and without regard to or adjustment for the occupation or the age of the employee, is equal to 35 percent or more of total."

## DISPOSITION

The entire question of apportionment needs to be reevaluated by the Board in light of the court's discussion herein.

The award and the Board's opinion on decisions after reconsideration are annulled as they pertain to apportionment and the award against the Subsequent Injuries Fund, and the matter remanded to the Board for further proceedings consistent with this opinion.

Allport, J., and Potter, J., concurred.