[Civ. No. 5502. Fifth Dist. July 30, 1980.]

MARK BRAMMER, Petitioner, v.
WORKERS' COMPENSATION APPEALS BOARD,
VILLAGE FOODLAND et al., Respondents.

COUNSEL

Ferrari, Cole & Tusan, Curtis A. Cole and Tom J. Leath for Petitioner.

Hanna, Brophy, MacLean, McAleer & Jensen, I. H. Hirsch and Daniel P. O'Brien for Respondents.

## OPINION

HANSON (P. D.), J.—Petitioner Mark Brammer, 24 years old, 6 feet 1 inch tall, weighing 195 pounds, of athletic build, a skier, a weightlifter, and a karate practicer, injured his back while working as a retail clerk in a supermarket; he applied for workers' compensation benefits. His employer, or its workers' compensation insurance carrier, respondents, contended that any disability was caused by a preexisting back problem not industrially related. After a hearing and after medical reports were received, the workers' compensation judge found that petitioner had a permanent 21 percent disability wholly caused by the industrial injury and awarded him a benefit of $5,285 payable at the rate of $70 a week, with an allowance of $550 for his attorneys' fees.

Respondents petitioned the Workers' Compensation Appeals Board for reconsideration of the findings and award. They contended that under Labor Code section 4663[1] apportionment of the disability was required. The board, agreeing with the respondents, issued a decision and order which granted reconsideration and apportioned one-third of the 21 percent disability to the preexisting back problem. This reduced the benefit to $3,237.50 with an allowance of $350 for attorneys' fees.

Petitioner filed a petition for review and the writ was granted.

Petitioner contends that the evidence does not support apportionment of the disability attributing part to petitioner's preexisting back problem. We agree.

On February 8, 1978, petitioner, who had been employed for several years as a grocery clerk at a supermarket in Fresno, California,

---

[1]Section 4663, unchanged since the Labor Code was adopted in 1937 and dating back to workmen's compensation statutes enacted in the years 1913 to 1919, provides: "In case of aggravation of any disease existing prior to a compensable injury, compensation shall be allowed only for the proportion of the disability due to the aggravation of such prior disease which is reasonably attributed to the injury."

wrenched and injured his lower back while working at his job. He experienced a sharp pain in the lower back when the injury occurred and later a more generalized pain which persisted. After being treated for the pain by a chiropractor for a few days, petitioner consulted his family doctor. X-rays were taken which showed congenital anomalies in the lumbar spine described as "a Grade I spondylolithesis and bilateral spondylolysis." The X-rays did not show evidence of any recent fracture or dislocation.

Before February 8, 1978, petitioner did not have back trouble nor had he ever consulted a doctor about his back. His job in the supermarket involved the unloading of dairy products from trucks, requiring him to lift 40- or 50-pound boxes and stack them head-high.

As of the date of the hearing, October 25, 1979, petitioner had not been employed since the accident but had attended California State University, Fresno, and was a graduating senior. He suffered backaches and had trouble sleeping; he had discontinued his participation in active physical sports.

It was stipulated at the hearing that petitioner had sustained a compensable injury causing temporary disability through March 30, 1979. Three issues remained to be settled: (1) was there need for further treatment? (2) was the disability permanent? (3) should there be apportionment of any permanent disability between the industrial injury and the preexisting condition?

Reports of four doctors were received in evidence. The opinions of the four are in general agreement, but the most comprehensive report is one dated February 20, 1979, from a doctor who examined petitioner at the request of petitioner's attorney. The doctor's report states: "This is a 25 year old gentleman who has a Grade I spondylolisthesis and bilateral spondylolysis. This was asymptomatic and nondisabling antecedent his industrial injury of February 1978.

"He does not show any of the hallmarks of a herniated disc at this time. He did have some findings suggestive of a radiculopathy but with conservative measures this has gone into a state of quiescence.

"His condition therefore may be considered to be permanent, stationary and ratable. The objective factors of impairment at this time would include the biomechanical defect seen on the lumbar spine films, the

loss of motion of the low back, some slight limitation of straight leg raising from the anticipated normal which is about five degrees off. He also has some discomfort on percussion and palpation of the paravertebral musculature.

"Subjectively, assessing this man's work capacity we would feel it prudent that he have a prophylactic restriction precluding him from heavy lifting, repeated bending and stooping.

"As far as apportionment is concerned, it is duly noted that he had no symptoms or impairment when competing in the open labor market antecedent his industrial injury. By the same token, we would feel that one-third of this man's current level of restriction is based purely upon the biomechanical abnormality in and of itself. The remaining two-thirds, however, is due to the industrial injury which lit up his symptomatology and disability and has created a permanent residual to the point where he continues to have ongoing symptomatology."

A report of May 16, 1979, from a doctor who had examined petitioner at respondents' request, contains the following summary: "This is a 25 year old grocery clerk who had a minor jerking episode of his low back on 2/8/78 and developed some low back pain which persisted that day so he saw a chiropractor and had several treatments. He continued to have back pain and then saw his own physician on 2/17/78. After X-rays showed congenital anomalies he was then referred for neurological evaluation. He was given some exercises to do. The patient has never returned to work. It was thought that he could not physically return to this job. He had further orthopaedic evaluation on 6/22/78 and again on 2/12/79.

"At the present time he continues to have some complaints relating to his low back.

"His examination shows no objective clinical abnormalities.

"In retrospect, then, this patient has had a low back strain superimposed upon congenital abnormalities of the low back. He has continued to have symptoms. There has been no change in his condition for many months and, therefore, I would consider the condition to be permanent, stationary and ratable.

"The factors of rating are as follows:

"A. Subjective—Some fairly constant aching across his low back. This could be considered as 'minimal to slight.' This is aggravated by prolonged sitting to become 'slight.' It is aggravated by repeated bending or heavy lifting to become 'slight to moderate.'

"B. Objective—None

"The above subjective factors would preclude this patient from 'heavy lifting, repeated bending and stooping.'

"I would agree...that in view of this patient's unstable back that he should have an apportionment of 1/3 due to the pre-existing condition and because this pre-existing condition itself contributes to the prolongation of his symptoms and in itself would call for some limitation of physical activities even if he had màde a full symptomatic recovery.

"I do not think that the patient could return to work as a grocery clerk which involved repeated bending and also much lifting in order to do the stocking of shelves.

"The patient is not in need of any further medical care at the present time and I doubt if he will need any further medical care unless there is some superimposed back injury."

Judge Gadebusch stated that the permanent disability resulting from the injury, according to the doctors whose reports are included here, involved the back and precluded heavy lifting, repeated bending and stooping. The judge further said: "There is no proof that applicant had any prior back disability or that he would be disabled today were it not for the aggravating affects [sic] of the injury." Judge Gadebusch concluded that the doctors' opinions "constitute impermissible retrospective apportionment. (*Gross* v. *WCAB* 40 C.C.C. [sic] 49)."

■ The standard of judicial review of decisions of the Workers' Compensation Appeals Board was restated as follows by Justice Tobriner, speaking for the California Supreme Court in *LeVesque* v. *Workmen's Comp. App. Bd.* (1970) 1 Cal.3d 627, 635-637 [83 Cal. Rptr. 208, 463 P.2d 432]. "In our appellate review of the decisions of the appeals board, which exercises a long-acknowledged administrative expertise, we have required that the record contain substantial evidentiary support for the appeals board's decisions. [Citations.] But from

time to time we have somewhat inconsistently mentioned, but generally not utilized, tests of judicial review which depart from the substantial evidence approach. [Citations.] This lack of consistency has caused considerable confusion among the Courts of Appeal and the workmen's compensation bar. [Citations.]

"We must return to the very explicit language of section 5952 to determine the proper scope of judicial review of the evidence in workmen's compensation cases: 'The review by the court shall not be extended further than to determine, based upon the entire record...whether... [t]he order, decision, or award was not supported by substantial evidence.'...In reviewing the evidence our legislative mandate and sole obligation under section 5952 is to review the entire record to determine whether the board's conclusion was supported by substantial evidence. [Citations.]" (Fns. omitted.)

█ In *Tanenbaum v. Industrial Acc. Com.* (1935) 4 Cal.2d 615 [52 P.2d 215], the court said: "It is now definitely settled that the acceleration, aggravation or 'lighting up' of a preexisting disease is an injury in the occupation causing the same. [Citations.] The underlying theory is that the employer takes the employee subject to his condition when he enters the employment, and that therefore compensation is not to be denied merely because the workman's physical condition was such as to cause him to suffer a disability from an injury which ordinarily, given a stronger and healthier constitution, would have caused little or no inconvenience. In such cases full compensation for the entire disability suffered is recoverable although the physical condition of the employee contributed to and increased the disability caused by the injury or prolonged and interfered with healing and recovery. In other words, there is no authority for prorating the extent of the disability due to the accident itself on the one hand and that due to the aggravation caused by the employee's physical condition on the other. [Citation.]" (4 Cal.2d at pp. 617-618.)

█ The medical opinion in the May 16, 1979, report that the preexisting condition of petitioner contributes to the prolongation of his symptoms has no legal significance in the determination of apportionment of petitioner's disability under the *Tanenbaum* holding above.

A prophylactic restriction, such as the doctors imposed precluding heavy lifting, repeated bending and stooping is a disability. (*Luchini* v.

*Workmen's Comp. App. Bd.* (1970) 7 Cal.App.3d 141 [86 Cal.Rptr. 453].) The doctors would attribute one-third of this restriction to a pre-existing condition which had caused no difficulty at all before the industrial injury and which had never been brought to anyone's attention before the injury.

No evidence was presented that petitioner's grade I spondylolisthesis and bilateral spondylolysis would have become progressively disabling if there had been no industrial injury. Under section 4663, "...when a subsequent injury lights up or aggravates a previously existing condition resulting in disability, liability for the full disability without proration is imposed upon the employer, and the appeals board may apportion the disability under the section 'only in those cases in which part of the disability would have resulted, in the absence of the industrial injury, from the "normal progress"' of the preexisting disease. [Citations.]" (*Ballard v. Workmen's Comp. App. Bd.* (1971) 3 Cal.3d 832, 837 [92 Cal.Rptr. 1, 478 P.2d 937].)

Petitioner's back was not examined before the industrial injury by any of the doctors who authored the reports or by any other doctor as far as we know. Without the injury, all the evidence indicates that petitioner's back would still support him in his skiing, karate, weightlifting and normal life-style—as it had for 24 years.

Judge Gadebusch stated that the opinions of the doctors whose reports are set out above constituted impermissible retrospective apportionment under *Gross v. Workmen's Comp. Appeals Bd.* (1975) 44 Cal.App.3d 397 [118 Cal.Rptr. 609]. The board disagreed, saying: "None of the reporting physicians...purports to impose a 'retroactive prophylactic restriction.' They are imposing a restriction at the present time, and we must determine the reason."

In *Franklin v. Workers' Comp. Appeals Bd.* (1978) 79 Cal.App.3d 224 [145 Cal.Rptr. 22], the court discussed apportionment under Labor Code section 4663, saying: "A preexisting disability cannot be established by a 'retroactive prophylactic work restriction' on the preexisting condition placed on the injured after the subsequent industrial injury in absence of evidence to show that the worker was actually restricted in his work activity prior to the industrial injury. [Citations.] Where the

injured was actually under a prophylactic restriction for a pre-existing condition at the time of the industrial injury, apportionment to a preexisting disability is proper. It is only the *retroactive* application of a prophylactic restriction to an otherwise nonexistent previous disability that is prohibited. (*Ibid.*) [¶] The prohibition against 'retroactive prophylactic work restrictions' to establish a preexisting disability is not inconsistent with the fact that prophylactic restrictions are ratable factors of permanent disability stemming from the industrial injury. (*Gross, supra*, 44 Cal.App.3d at p. 404.) Applying a prophylactic work restriction retroactively creates 'a sort of factual or legal fiction of an otherwise nonexistent previous disability or physical impairment.' (*Ibid.*)" (79 Cal.App.3d at p. 238. Italics in original.)

On the state of the record, imposing a present prophylactic work restriction after the industrial injury occurred and apportioning it in part to a preexisting asymptomatic condition creates a fiction similar to that condemned in *Franklin v. Workers' Comp. Appeals Bd., supra*, 79 Cal.App.3d 224 and in *Gross v. Workmen's Comp. Appeals Bd., supra*, 44 Cal.App.3d 397.

The "retroactive" prophylactic work restriction condemned by the cases cited above is a restriction where the employee in fact was not told before the industrial injury to restrict his future work activity for medical reasons. Here, the doctors purport to impose a present work restriction for a medical condition which at present does not exist—a back free from the effects of an industrial injury.

The new fiction may be slightly different from the old but is equally artificial.

There is no evidence whatsoever that the petitioner was actually restricted in his work activity before the industrial injury. All evidence is to the contrary. Judge Gadebusch, practically speaking, was correct in his determination. There is insufficient evidence in the record to sustain apportionment. We need not address petitioner's contention of procedural error.

The decision of the board is annulled and the cause is remanded to the board with directions to enter a new and different award consistent with the expressions in this opinion.

Brown (G. A.), P. J., and Zenovich, J., concurred.